FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
APRIL 23, 2020

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
APRIL 23, 2020

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 97375-0 |
| Respondent, | ) | |
| v. | ) | |
| | ) | En Banc |
| DAVID BRENT HAGGARD, | ) | |
| Petitioner. | ) | Filed April 23, 2020 |

MADSEN, J.—A class C felony washes out and is omitted from a defendant's offender score as long as he or she is not convicted of any crime within five years of the last date of release from confinement. RCW 9.94A.525(2)(c). David Haggard was convicted of a misdemeanor offense within this five-year period, which was dismissed pursuant to RCW 3.66.067. When Haggard later pleaded guilty to burglary and arson, the trial court included prior class C felonies in his criminal history, finding that the dismissed misdemeanor conviction interrupted the washout period for those offenses. Haggard contends this was error. Because a dismissed conviction constitutes a "conviction" under the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, and

misdemeanor dismissal and vacation are distinct processes, Haggard's offender score was properly calculated. We affirm.

## BACKGROUND

Haggard committed multiple class C felonies while living in California. Clerk's Papers (CP) at 110; *see also id.* at 126-27 (State's memorandum on sentencing).[1] Less than five years later, Haggard moved to Washington and committed another offense. Haggard pleaded guilty to a charge of disorderly conduct in 2011. The trial court deferred Haggard's sentence and dismissed the conviction.

In 2017, Haggard pleaded guilty to burglary and arson. When calculating his offender score, the court examined Haggard's criminal history and included his previous California convictions. The State argued, and the court agreed, that only vacated convictions could be omitted from criminal history; because Haggard's 2011 conviction was dismissed but not vacated, it interrupted the washout period for the class C felonies. *Id.* at 126, 128-32 (State's memorandum on sentencing). Consequently, the previous offenses counted in Haggard's offender score: the three California convictions each counted as one point and resulted in a score of six.[2] The Court of Appeals affirmed

---

[1] Haggard was convicted of taking a vehicle without the consent of the owner and had two separate convictions for possession of methamphetamine. CP at 110; *see also id*. at 140, 142, 144 (California judgment and sentences for the three offenses). Following his final 2005 conviction for possession, Haggard was sentenced to two years in prison and was paroled in May 2006. *Id*. at 127 (State's memorandum on sentencing). The State determined that Haggard had to remain "crime free until May 11, 2011 in order for his three felony convictions out of California to wash." *Id*. at 129.

[2] The court sentenced Haggard to concurrent sentences of 39 months for arson, 29 months for burglary, and 18 months of community custody. *Id*. at 107-08, 112. Haggard was also sentenced in an unrelated trial, under a separate cause number. *Id*. at 107; Sentencing Proceedings

Haggard's offender score calculation. *State v. Haggard*, 9 Wn. App. 2d 98, 442 P.3d 628 (2019). Haggard petitioned for review here, which we granted. *State v. Haggard*, 193 Wn.2d 1037 (2019).

ANALYSIS

This case involves the interpretation of several statutes and is strictly a question of law, which is reviewed de novo. *State v. Breazeale*, 144 Wn.2d 829, 837, 31 P.3d 1155 (2001) (citing *Millay v. Cam*, 135 Wn.2d 193, 198, 955 P.2d 791 (1998)). It is the duty of the court to construe statutes in the manner that best fulfills the legislative purpose and intent. *Id.* (citing *State ex rel. Royal v. Bd. of Yakima County Comm'rs*, 123 Wn.2d 451, 462, 869 P.2d 56 (1994)). If the meaning of a statute is plain on its face, we "give effect to that plain meaning as an expression of legislative intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)).

To determine the plain meaning of a statute, we look to the text, as well as the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole. *Id.* at 9-12; *see also Wash. Pub. Ports Ass'n v. Dep't of Revenue*, 148 Wn.2d 637, 645, 62 P.3d 462 (2003). An undefined term is "given its plain and ordinary meaning unless a contrary legislative intent is indicated." *Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 920-21, 969 P.2d 75 (1998) (citing *Cowiche*

---

(Sept. 15, 2017) at 634 (Haggard was found guilty of unlawful possession of a firearm and violation of the Uniform Controlled Substances Act, ch. 69.50 RCW, via possession of methamphetamine). The Court of Appeals affirmed in an unpublished decision. *State v. Haggard*, No. 77427-1-I (Wash. Ct. App. June 3, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf/774271.pdf.

*Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 813, 828 P.2d 549 (1992)). If, after this inquiry, the statute is susceptible to more than one reasonable interpretation, it is ambiguous and we "may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent." *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007) (citing *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001)). We review the calculation of an offender score de novo. *State v. Mutch*, 171 Wn.2d 646, 653, 254 P.3d 803 (2011) (citing *State v. Parker*, 132 Wn.2d 182, 189, 937 P.2d 575 (1997)).

Haggard contests the calculation of his offender score. We look first, therefore, to the statute governing the calculation of offender scores, RCW 9.94A.525. Generally, an offender score is composed of prior felony convictions, each counting as a single point. The sum of these points is an offender score. RCW 9.94A.525 ("The offender score is the sum of points accrued under this section."). RCW 9.94A.525(2)(c) states, in relevant part:

> [C]lass C prior felony convictions other than sex offenses shall not be included in the offender score if, since the last date of release from confinement . . . the offender had spent five consecutive years in the community without committing *any* crime that subsequently results in a conviction.

(Emphasis added.) The statute can be broken down into two clauses: a trigger clause that identifies the beginning of the five-year period, and a continuity or interruption clause that outlines the substantive requirements an offender must satisfy during the five-year period. *State v. Ervin*, 169 Wn.2d 815, 821, 239 P.3d 354 (2010) (citing *In re Pers. Restraint of*

*Nichols*, 120 Wn. App. 425, 432, 85 P.3d 955 (2004)). While the phrase "any crime" is undefined in RCW 9.94A.525(2)(c), courts look to RCW 9A.04.040(1) for the definition:

> An offense defined by this title or by any other statute of this state, for which a sentence of imprisonment is authorized, constitutes a crime. Crimes are classified as felonies, gross misdemeanors, or misdemeanors.

*See State v. Crocker*, 196 Wn. App. 730, 735, 385 P.3d 197 (2016). In other words, prior class C felony convictions are excluded from an offender score as long as an offender does not commit any crime, including misdemeanors, within five consecutive years.[3]

Regarding dismissal, RCW 3.66.067 allows a court to defer and dismiss a defendant's misdemeanor conviction. For good cause shown, the court may permit a defendant to withdraw his or her guilty plea and enter a plea of not guilty, and then the court may dismiss the charges. RCW 3.66.067.[4]

A separate statute governs vacation of a conviction. A person convicted of a misdemeanor offense who has satisfied the terms of his or her sentence may apply to a court for vacation of a sentence under RCW 9.96.060. When vacating a misdemeanor, the court permits the applicant to withdraw a guilty plea and enter a plea of not guilty. Alternatively, the court can set aside the guilty verdict; dismiss the information, indictment, compliant or citation; and vacate the judgment and sentence. RCW 9.96.060(1). Vacating an offense releases an applicant "from all penalties and disabilities resulting from the offense and the fact that the person has been convicted of the offense

---

[3] Haggard does not contest that his California convictions are equivalent to class C felonies.
[4] RCW 3.66.067 applies to district courts. A functionally identical statute outlines the same procedures for municipal court under RCW 3.50.320. The parties treat RCW 3.66.067 and RCW 3.50.320 as equivalent statutes. *See* Suppl. Br. of Resp't at 7 n.4; Pet. for Review at 7 n.2.

shall not be included in the person's criminal history for purposes of determining a sentence in any subsequent conviction." RCW 9.96.060(6)(a). Importantly, once a conviction is vacated, it cannot be used to "determin[e] a sentence in any subsequent conviction." *Id.*

> A dismissed misdemeanor conviction meets the definition of "conviction" pursuant to the SRA

Haggard contends his dismissed misdemeanor conviction does not qualify as a conviction under the SRA and so should have been excluded from his criminal history. Pet. for Review at 4-6, 17-18. Haggard bases this argument on the deceptively simple idea that once a guilty plea is withdrawn and a not guilty plea is entered, a conviction is accordingly dissolved for *all* purposes. *Id.* at 9-10; Suppl. Br. at 4-5. For support, Haggard points to the overlapping language in the dismissal and vacation statutes: under both provisions, a defendant may withdraw a guilty plea and enter a not guilty plea. *Compare* RCW 3.66.067 (permitting "a defendant to withdraw the plea of guilty and to enter a plea of not guilty, and the court may dismiss the charges"), *with* RCW 9.96.060(1)(a)-(b) ("When vacating a conviction under this section, the court effectuates the vacation by: . . . Permitting an applicant to withdraw the applicant's plea of guilty and to enter a plea of not guilty."). Because Haggard withdrew his 2011 guilty plea and the charge was dismissed, the basis for the conviction was eliminated and no conviction remained to vacate. Pet. for Review at 10; Suppl. Br. at 4-5.

Haggard's argument is attractive when read in isolation, but it collapses when read in the greater context of the SRA and our case law interpreting that statutory scheme. At

the outset, it is worth noting that Haggard essentially repeats an argument already considered by this court in *In re Personal Restraint of Carrier*, 173 Wn.2d 791, 272 P.3d 209 (2012). There, Carrier asserted that his pre-SRA felony conviction ending in dismissal did not qualify as a conviction under the SRA. *Id*. at 800-03. We rejected this argument. *Id.* at 803. We should reject Haggard's claim for the same reasons.

In *Carrier*, we first noted that courts had already held that pre-SRA convictions ending in suspension or deferment continued to qualify as convictions under the SRA. *Id.* at 801 (citing *State v. Whitaker*, 112 Wn.2d 341, 346, 771 P.2d 332 (1989) (recognizing that a "deferred sentence is treated as a 'conviction served' for purposes of the SRA"); *State v. Partida*, 51 Wn. App. 760, 762, 756 P.2d 743 (1988) (noting that defendant "stands convicted . . . for purposes of the SRA," despite an "order of dismissal after fulfilling the terms of his probation"); *State v. Harper*, 50 Wn. App. 578, 580, 749 P.2d 722 (1988) (noting that regardless of whether the sentence is deferred or suspended, "the defendant has been adjudged guilty")).

Next, legislative amendments to the definition of conviction supported the notion that a dismissed conviction remains an SRA conviction. *Id.* As originally enacted, the SRA defined conviction narrowly: "an adjudication of guilt pursuant to Titles 10 or 13 RCW." Former RCW 9.94A.030(4) (1981). The legislature amended this definition in 1986 to read that a conviction "means an adjudication of guilt pursuant to Title 10 or 13 RCW *and* includes a verdict of guilty, a finding of guilty, and acceptance of a plea of guilty." LAWS OF 1986, ch. 257, § 17(6) (emphasis added). This change clarified that "'a

finding of guilt determined by a jury or a judge (upon entry of a plea or otherwise) is a conviction for the purpose of the SRA.'" *Carrier*, 173 Wn.2d at 802 (quoting WASH. SENTENCING GUIDELINES COMM'N, IMPLEMENTATION MANUAL II-8 cmt. (1987)). The expansion of the definition demonstrated that the SRA focuses on the "initial finding of guilt, not what occurs later." *Id.*

Finally, the language of the dismissal statute at issue showed that a conviction remained a conviction under the SRA. *Id.* at 802-03. Former RCW 9.95.240 (1957) allowed a defendant to withdraw a guilty plea and enter a not guilty plea, and the court could then dismiss the information or indictment, releasing a defendant from "all penalties and disabilities resulting from the offense or crime of which he [or she] has been convicted." The statute also allowed future prosecutions to plead and prove the prior conviction as if dismissal had not been granted. *Id.* The provision released a defendant from penalties associated with a conviction, but it did not erase the *fact* of the conviction itself. *Carrier*, 173 Wn.2d at 803. Thus, even though a "defendant may later be released from some of the legal consequences of his conviction, a dismissal under former RCW 9.95.240 does not invalidate or erase the conviction." *Id.*

*Carrier* is not wholly dispositive here. Unlike former RCW 9.95.240, dismissal under RCW 3.66.067 does not contain language allowing future prosecutions to use a previously dismissed conviction. Simply put, the language between the two statutes is different. But this was only part of the *Carrier* court's reasoning. We also relied on the expanded definition of the term "conviction" to conclude that the SRA focuses on the

8

initial finding of guilt, not what comes after. *Id.* at 802. This analysis is applicable and persuasive in the misdemeanor context because both concern the definition of conviction under the SRA. Like *Carrier*, Haggard asserts his dismissed conviction does not meet that definition. Yet, as *Carrier* explained, the term includes more than just an adjudication or finding of guilt, it concerns an acceptance of guilt. While a defendant may later be released from some legal consequence of his or her conviction, i.e., deferred sentence and dismissal, this does not invalidate or erase the initial finding of guilt for future sentencing purposes. *See id.* at 803.[5]

Haggard declares that "fundamental tenets of criminal procedure" direct us to conclude a dismissed conviction is equal to a vacated conviction. Pet. for Review at 9. Yet Haggard demonstrates, through his own reliance on *Carrier*, we are concerned not with general notions of criminal procedure but with the SRA.

The SRA is a technical statute, with specific definitions for the terms it uses. Those specific definitions and our case law interpreting them guide our reasoning here. Accordingly, as guided by *Carrier*, we hold that a dismissed misdemeanor conviction constitutes a conviction under the SRA.

<u>Dismissal and vacation are not legally equivalent</u>

Haggard offers another previously rejected *Carrier* argument for why a dismissed misdemeanor conviction should be excluded from a defendant's criminal history: even if

---

[5] *See also State v. Gallaher*, 103 Wn. App. 842, 844, 14 P.3d 875 (2000). In that case, the State asserted that a dismissal would result in a charge and conviction not being a part of Gallaher's record. *Id.* The Court of Appeals noted that "[n]othing in RCW 3.66.067 implies that a conviction is automatically deleted or expunged from the criminal record after dismissal." *Id.*

9

his conviction remains a conviction under the SRA, dismissal is equivalent to vacation. *See Carrier*, 173 Wn.2d at 800-01 ("Alternatively, [Carrier] argues that the dismissal order effectively vacated the indecent liberties conviction, excluding it from his criminal history."); Pet. for Review at 15 ("In *Carrier*, the appellant made an argument precisely parallel to that made by Mr. Haggard—that his dismissed felony conviction should not be counted in his offender score because the trial court's dismissal of his sentence . . . had the same legal effect as if the trial court had vacated the conviction."). The State responds that the plain language of RCW 3.66.067 and RCW 9.96.060 illustrates that they are different procedures yielding different results, rather than—as Haggard contends—separate means to the same end. Suppl. Br. of Resp't at 5-13. We agree with the State.

Dismissal and vacation are governed by different statutes. Title 3 RCW sets out the jurisdiction, venue, and authority of a district court. Ch. 3.66 RCW. Vacation is discussed six titles away in chapter 9.96 RCW, concerning the restoration of civil rights. *See* RCW 9.96.010.

The requirements for dismissal versus vacation are also distinct. Dismissing a charge rests almost entirely on the discretion of a trial court.[6] RCW 3.66.067. As an ex parte proceeding, dismissal requires only that good cause is shown and that the defendant has abided by any terms of the deferral. *Id.*; *see also* RCW 3.66.068.[7]

---

[6] A court cannot defer sentences for alcohol- or drug-related offenses under RCW 46.61.5055.
[7] The sentencing judge noted that dismissal in Haggard's case occurred "ex parte." Trial Proceedings (Sept. 8, 2017) at 609-10.

10

Vacation entails substantially more. Among other things, applicants may not have their conviction vacated if one of the following is true: pending criminal charges existed against the applicant at the time of the application; the offense sought to be vacated was a violent, attempted violent, or an alcohol-related offense; less than three years have passed since the applicant completed the terms of his or her sentence including financial obligations; the applicant is convicted of a new crime since the previous conviction; or there was a pending restraining order against the applicant. *See* RCW 9.96.060(2)(b)-(d), (g)-(i).

For domestic violence offenses, RCW 9.96.060 sets out additional limitations. For example, vacation is prohibited if the court determines the offense involved domestic violence and the applicant failed to provide written notification of the petition to the prosecuting attorney's office that litigated the offense, or if less than five years have elapsed since completing the terms of the original sentence, including financial obligations and any ordered treatments. RCW 9.96.060(f)(i), (iv). Granting dismissal and vacation are both matters of discretion, but, as discussed above, the vacation statute limits this discretion.

RCW 9.96.060 and .067 contain substantively different requirements. A successful dismissal does not automatically grant a vacation. As the State points out, a person who satisfies the requirements of a deferred sentence less than three years ago would be eligible for dismissal, but not for vacation. Br. of Resp't at 11-12 (Wash. Ct.

11

App. No. 77426-3-I (2018)). This example demonstrates that the legislature intended to treat dismissal separately from vacation.

Haggard again relies on fundamental tenets of criminal procedure to assert that dismissal is tantamount to vacation. But, as with Haggard's first contention, resolution of this issue turns not on larger principles of criminal procedure but on the specific provisions of the SRA. And the SRA itself demonstrates that the legislature viewed dismissal and vacation differently. RCW 9.94A.030(11)(b) states that "[a] conviction may be removed from a defendant's criminal history *only if it is vacated pursuant to RCW 9.96.060*, 9.94A.640, 9.95.240, or a similar out-of-state statute, or if the conviction has been vacated pursuant to a governor's pardon." (Emphasis added.) The canon expressio unius est exclusio alterius tells us that "to express one thing in a statute implies the exclusion of the other. Omissions are deemed to be exclusions." *In re Det. of Williams*, 147 Wn.2d 476, 491, 55 P.3d 597 (2002) (internal citations omitted) (citing *Landmark Dev., Inc. v. City of Roy*, 138 Wn.2d 561, 571, 980 P.2d 1234 (1999)). RCW 9.94A.030(11)(b) specifically lists vacation under RCW 9.96.060 as the "only" means of removing a conviction from criminal history. The provision does not mention dismissal under RCW 3.66.067. Thus, the omission of RCW 3.66.067 is deemed an exclusion.

The legislative history further supports this interpretation. Misdemeanor dismissal was originally enacted in 1969. LAWS OF 1969, ch. 75, § 1. Thirty years later, the legislature created a mechanism to vacate misdemeanors. LAWS OF 2001, ch. 140, § 1. The bill report for the enacting legislation, Substitute House Bill 1174, states in no

uncertain terms that "[s]ome felony convictions can be 'vacated.' Misdemeanor convictions cannot." FINAL B. REP. ON SUBSTITUTE H.B. 1174, at 1, 57th Leg. Reg. Sess. (Wash. 2001).[8] Misdemeanants "may have their charges 'dismissed' after successful completion of a suspended sentence. However, neither misdemeanants nor pre-SRA felons are authorized to respond to an employment application by saying that they have never been convicted of an offense." *Id*. at 2.

Misdemeanor vacation was enacted in 2001, yet misdemeanor dismissal had already existed for decades. If the legislature intended dismissal to be tantamount to vacation, there would be no reason to create a new statute to bring about a result that was already available. Indeed, the legislature was well aware that Washington courts lacked authority to vacate a misdemeanor conviction at the time. FINAL B. REP. ON SUBSTITUTE H.B. 1174, at 3. The bill report for Substitute House Bill 1174 cites *State v. Noel*, 101 Wn. App. 623, 625, 5 P.3d 747 (2000), for the proposition. Noel argued that a trial court erred when it concluded it lacked authority to vacate his misdemeanor convictions, and he pointed to "RCW 9.94A.230 and RCW 3.66.067 as providing the needed authority." *Noel*, 101 Wn. App. at 627. The Court of Appeals disagreed, finding neither statute applicable: RCW 9.94A.230 pertained only to felony convictions and RCW 3.66.067 only to deferred sentencing. *Id*. The legislature knew of *Noel*'s holding and provided the necessary vacation authority by enacting RCW 9.96.060.

---

[8] "For felonies committed before the SRA, and for misdemeanor and gross misdemeanor offenses, there are no provisions equivalent to [felony] vacation of record procedure." FINAL B. REP. ON SUBSTITUTE H.B. 1174, at 2.

The plain language of the vacation and dismissal statutes demonstrate that they exist as separate processes. But even accepting that both provisions could apply to Haggard's case, a "'specific statute will supersede a general one.'" *Kustura v. Dep't of Labor & Indus.*, 169 Wn.2d 81, 88, 233 P.3d 853 (2010) (quoting *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 630, 869 P.2d 1034 (1994)). Vacation pursuant to RCW 9.96.060 contains specific and distinct requirements compared with dismissal pursuant to RCW 3.66.067, and RCW 9.96.060 would therefore supersede it.

Moreover, the overlapping language on withdrawal of a guilty plea between dismissal and vacation does not render either statute superfluous or meaningless. *See* Pet. for Review at 9-10; Suppl. Br. at 7. Under RCW 9.96.060, some procedural steps are unnecessary if a charge has already been dismissed under RCW 3.66.067, *see* Suppl. Br. of Resp't at 10, yet other requirements remain for an applicant to satisfy in order to obtain vacation. *E.g.*, RCW 9.96.060(2)(f)(i) (for domestic violence offenses, an applicant must provide "written notification of the vacation petition to the prosecuting attorney's office that prosecuted the offense for which vacation is sought").[9] Isolated redundancies are not sufficient to overcome the overall statutory context and purposes. *In re Det. of Anderson*, 185 Wn.2d 79, 86 n.4, 368 P.3d 162 (2016). Interpreting the

---

[9] It is worth noting that while a defendant cannot automatically obtain a vacation by obtaining a dismissal, RCW 9.96.060(1) does not preclude the reverse: a defendant who has satisfied all of RCW 9.96.060's requirements (as well as any additional sentencing requirements) may acquire a dismissal at the same time as a vacation.

14

dismissal statute, as Haggard urges us, would conflict with the express legislative intent to the contrary.

Haggard largely relies on *Breazeale* and *Carrier* to argue that dismissal is equivalent to vacation. Pet. for Review at 14-18. In *Breazeale*, defendants succeeded in dismissing pre-SRA convictions under RCW 9.94A.230. The defendants sought vacation from a trial court to prevent the Washington State Patrol from revealing their convictions to prospective employers. 144 Wn.2d at 833-34. The court expunged the defendants' arrest records, but the state patrol refused to carry out this ruling because RCW 9.95.240 did not expressly vacate records and the convictions predated RCW 9.94A.230. *Id.*

We disagreed, explaining that the legislature intended RCW 9.95.240 and RCW 9.94A.230 (*recodified as* RCW 9.94A.640) to have the same practical effect. *Id*. at 837. Central to our holding was the shared terms between the provisions: "released from all penalties and disabilities." *Id.* We had previously interpreted these words to mean that a person who has been granted dismissal under RCW 9.95.240 is entitled to assert that he or she has never been convicted. *Id.* (citing *In re Disciplinary Proceeding Against Stroh*, 108 Wn.2d 410, 417-18, 739 P.2d 690 (1987)).

We also noted that the dismissal statute expressed the policy that a deserving offender's preconviction status should be restored and that relevant treatises interpreted RCW 9.95.240 and RCW 9.94A.230 as parallel. *Id*. at 837-38 (quoting DAVID BOERNER, SENTENCING IN WASHINGTON § 11.6, at 11-7 (1985)). In addition, without the ability to vacate a conviction and restrict access to records, the words of RCW 9.95.240

15

("releas[ing defendants] from all penalties and disabilities") would be meaningless. Thus, the state patrol was required to expunge the records under the dismissal statute. *Id*. at 838.

In *Carrier*, we discussed and clarified *Breazeale*. The premise of *Breazeale* was that the legislature intended the SRA vacation statute to have the same effect as the pre-SRA dismissal statute. *Carrier*, 173 Wn.2d at 806. Requiring defendants to petition the court twice under RCW 9.95.240 to obtain dismissal and then vacation served "no purpose." *Id*. However, we also noted that the legislature amended RCW 9.95.240 in response to *Breazeale*. *Id*. at 807. In 2003, lawmakers required applicants seeking vacation to file under RCW 9.94A.640. LAWS OF 2003, ch. 66, § 1(2)(a). The legislature severed vacation from dismissal, requiring applicants to seek either outcome separately. *See Carrier*, 173 Wn.2d at 807-08. While Carrier would have succeeded under *Breazeale*, we concluded that the 2003 amendment applied retroactively. *Id*. at 807-08, 810.[10]

Haggard refers to the 2003 amendment as the "*Breazeale* fix." He claims that because the legislature amended the felony dismissal statute (RCW 9.95.240) and did not amend the misdemeanor dismissal statute (RCW 3.66.067), lawmakers intended

---

[10] Nonetheless, we held the conviction should have been excluded from Carrier's criminal history because the 2003 amendment retroactively affected his vested right in the vacated status of his conviction and so could not be applied to him. *Carrier*, 173 Wn.2d at 810-13 ("A statute may not be applied retroactively to infringe a vested right. . . . [O]nce a conviction is vacated, it cannot be revived for purposes of enhancing a defendant's criminal history. Carrier's indecent liberties conviction was effectively vacated prior to the 2003 amendment to RCW 9.95.240. The State cannot apply the amendment retroactively to infringe Carrier's vested right in the vacated status of his conviction.").

16

*Breazeale* to apply. Pet. for Review at 14-16. In other words, that misdemeanor dismissal is equivalent to vacation.

Haggard not only misreads our *Breazeale* decision, he misconstrues the *Breazeale* fix. The *Breazeale* decision turned on the statutory language of the felony dismissal statute requiring the release of defendants from "'all penalties and disabilities resulting from the offense or crime of which he [or she] has been convicted.'" 144 Wn.2d at 835 (quoting RCW 9.95.240). The felony vacation and dismissal statutes shared this language, and based on the common terms, we concluded the statutes had the same effect. *Id.* Misdemeanor dismissal under RCW 3.66.067, on the other hand, does not contain this or similar language. Only the misdemeanor *vacation* provision "release[s] [an applicant] from all penalties and disabilities resulting from the offense." RCW 9.96.060(6)(a). *Breazeale* does not help Haggard's case.

Nor does the *Breazeale* fix. Our *Breazeale* opinion held that felony dismissal was equivalent to vacation, and the legislature responded by amending the statute to prevent this outcome. *Carrier*, 173 Wn.2d at 807. The legislative history for RCW 9.96.060 shows the impetus for enacting the statute was the lack of a vacation mechanism, even though dismissal under RCW 3.66.067 was already on the books. Despite Haggard's claim, no legislative acquiescence is demonstrated by the lack of a *Breazeale* fix to the misdemeanor dismissal and vacation statutes because there is no reason for the legislature to have applied it. *See* Pet. for Review at 17-18.

17

_RCW 9.94A.525 is not ambiguous_

Haggard asserts that the class C washout provision, RCW 9.95A.525, is ambiguous. *Id*. at 4-5, 9. He contends this is so because if read literally, RCW 9.95A.525 would lead to absurd results: (1) the statute would include convictions reversed on direct appeal or collateral review because they had at one point resulted in a conviction that was later reversed and (2) it is logically inconsistent. *Id*. at 6, 12-13. Accordingly, he argues, the rule of lenity requires the statute be interpreted in his favor. *Id*. at 4-5. This argument is unconvincing.

First, an overturned conviction is not a conviction for sentencing purposes. A court effectuates vacation by permitting an applicant to withdraw a plea of guilty and enter a plea of not guilty or, if convicted after a plea of not guilty, the court sets aside the verdict and dismisses the information, indictment, or complaint, and vacates the judgment and sentence. RCW 9.96.060(1)-(2). When a court reverses or overturns a sentence it effectively vacates it, dissolving the conviction. *In re Pers. Restraint of Skylstad*, 160 Wn.2d 944, 954, 162 P.3d 413 (2007). Indeed we characterize overturned convictions as being vacated. *E.g.*, *State v. Cantu*, 156 Wn.2d 819, 829, 132 P.3d 725 (2006) ("We therefore reverse the Court of Appeals [and] vacate the conviction."). Haggard's assertion that an overturned conviction remains to be vacated ignores that such a conviction has already been vacated by a reviewing court. Vacating a judgment and sentence for constitutional infirmity, for example, reverses a conviction and, inherently, a guilty plea or conviction after a plea of not guilty. *See State v. Schwab*, 163 Wn.2d 664,

680, 185 P.3d 1151 (2008) (Sanders, J., dissenting) ("a vacated conviction is a nonexistent conviction"). An overturned or reversed conviction has already been eliminated and therefore vacated through the process of judicial review. No additional action under RCW 9.96.060 is necessary.

Moreover, the overturned or reversed conviction was not final, and thus not subject to vacation, during the appeals process. *E.g.*, *Skylstad*, 160 Wn.2d at 948-49 (stating that a judgment is final when an appellate court issues its mandate disposing of a direct appeal, which terminates review and ends all litigation on the merits); *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 140, 267 P.3d 324 (2011) ("After the right of appeal has been exhausted and the appeal is final, the defendant is afforded the additional right to collateral review."). The SRA defines convictions more broadly than general notions of criminal procedure, but that definition does not extend so far as to include not-yet-final convictions that are subject to appeal and ultimately reversed or overturned.

Second, Haggard asserts without citation to authority that a defendant with a dismissed sentence is deemed more worthy of leniency than other defendants who were not granted deferral. Pet. for Review at 12. According to Haggard, it is absurd to conclude the legislature intended to allow the less-deserving defendant to obtain vacation by filing for it under RCW 9.96.060 but *not* allow vacation for the more-deserving, deferred sentence defendant. *Id*. at 12-13. Vacation under RCW 9.96.060 sets out specific requirements deemed necessary by the legislature. Whether a defendant merits a deferred sentence is irrelevant to whether a defendant satisfies those requirements. It is

not absurd to require additional effort to obtain vacation under RCW 9.96.060 than merely a trial court's discretion (as under RCW 3.66.067) because vacation results in a greater benefit—namely, exclusion from criminal history. The language of RCW 9.96.060 plainly requires a defendant who has a dismissed conviction to separately seek vacation of that conviction in order for it to be omitted from his or her criminal history.

CONCLUSION

Haggard does not dispute that he was convicted of the 2011 misdemeanor disorderly conduct charge prior to the conclusion of RCW 9.94A.525's washout period. Nor does he dispute that he did not seek vacation under RCW 9.96.060. Only a vacated conviction under RCW 9.96.060 can be omitted from a defendant's criminal history. RCW 9.96.060(6)(a). As discussed above, a dismissed conviction meets the SRA's definition of conviction and dismissal is not legally equivalent to vacation. Because Haggard did not move to separately vacate his 2011 misdemeanor conviction, it interrupted the washout period and the trial court properly included the prior class C felonies in his offender score. Accordingly, we affirm.

No. 97375-0

_Madsen, J._

WE CONCUR:

_Stephens, C.J._

_Johnson, J._

_Owens, J._

_Wiggins, J.P.T._

21

No. 97375-0

GORDON McCLOUD, J. (dissenting)—David Haggard pleaded guilty to misdemeanor disorderly conduct in 2011. In exchange for that guilty plea, the district court deferred his sentence and placed him on probation. Haggard complied with all conditions of his probation, and the district court dismissed the case.

Today, the majority holds that that "dismissal" was just a superficial word dangled in front of Haggard's nose to extract a guilty plea, devoid of any substance or benefit to Haggard. That "dismissal" promise did not mean the court would really dismiss Haggard's conviction. Because Haggard did not *also* seek "vacation" of that dismissed conviction, it remained on his record, just like any other conviction would.

The legislature cannot possibly have intended this result. I therefore respectfully dissent.

1

FACTS

Haggard was convicted of various crimes in California between 2002 and 2005. Clerk's Papers (CP) at 110. Approximately five years after his release, the State of Washington charged Haggard with misdemeanor disorderly conduct. He pleaded guilty pursuant to a plea-bargained exchange of promises, and the district court deferred his sentence and placed him on probation. Haggard's probation terms required him to submit to an alcohol assessment, complete an anger management workshop, commit no similar violations, and complete other "special conditions" that are outside our record. CP at 152. Haggard complied fully with all these conditions. Accordingly, the district court dismissed the case against him.

In 2017, the trial court found Haggard guilty of the felonies at issue in this case after a stipulated facts bench trial. CP at 104.

ANALYSIS

I.    The Two Statutes Offer Alternative Means for Different Misdemeanants To Clear the Record of Their Conviction

The primary issue before this court is whether a "dismissed" conviction under RCW 3.66.067 may interrupt the SRA's[1] criminal history washout period

---

[1] Sentencing Reform Act of 1981, ch. 9.94A RCW.

under RCW 9.94A.525(2).[2]  To answer this question, we must determine whether

Haggard's dismissed 2011 misdemeanor remained a "conviction" after its

dismissal.  I would hold that the answer to that question is a resounding no.

The majority labels RCW 3.66.067 a "dismissal" statute and RCW 9.96.060

a "vacation" statute.  Majority at 10.  But both statutes seek to clear convictions

from the offender's record.  They are just geared toward different offenders, and

they serve different purposes.

RCW 3.66.067 permits district courts to defer a misdemeanor sentence and

place the defendant on probation instead.  "During the time of the deferral, the

court may, for good cause shown, permit a defendant to withdraw the plea of guilty

and to enter a plea of not guilty, and the court may dismiss the charges."  RCW

3.66.067.  "The granting of a deferred sentence and probation, following a plea or

verdict of guilty, is a rehabilitative measure, and as such is not a 'matter of right

but is a matter of grace, privilege, or clemency granted to the deserving and

---

[2] "[C]lass C prior felony convictions other than sex offenses shall not be included in the offender score if since the last date of release from confinement . . . pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender had spent five consecutive years in the community without committing any crime that subsequently results in a conviction."  RCW 9.94A.525(2)(c).

3

withheld from the undeserving,' within the sound discretion of the trial judge."[3]

*State v. Shannon*, 60 Wn.2d 883, 888, 376 P.2d 646 (1962) (quoting *State v. Farmer*, 39 Wn.2d 675, 679, 237 P.2d 734 (1951)), *overruled in part on other grounds by Mempa v. Rhay*, 68 Wn.2d 882, 888-89, 416 P.2d 104 (1966), *rev'd by* 389 U.S. 128, 88 S. Ct. 254, 19 L. Ed. 2d 336 (1967).  Thus, only a small subset of "deserving" misdemeanants receive the benefit of a deferred sentence, and the smaller subset of those who successfully comply with all probation conditions receive dismissal.

RCW 9.96.060 provides a more complicated procedure for "vacating" convictions.  It is available after three crime-free years in the community.  RCW 9.96.060(2)(g), (h).  Unlike a deferred sentence, which is available only to "deserving" defendants at the discretion of the trial judge, *Shannon*, 60 Wn.2d at 888, vacation of sentence is available to almost *any* misdemeanant, subject to various specific statutory exceptions.[4]

---

[3] *Cf.* Majority at 11 ("Granting dismissal and vacation are both matters of discretion, but . . . the vacation statute limits this discretion.").  Whether to offer a defendant the benefit of a deferred sentence at all is a matter of trial court discretion; when the defendant complies with the terms of probation, the trial court is obligated to dismiss the conviction.

[4] As the majority recognizes, both statutes contain exceptions.  RCW 3.66.067 does not permit trial courts to defer driving under the influence sentences; RCW 9.96.060 prohibits dismissal or vacation of various domestic violence and sex offenses.  These

While RCW 3.66.067 provides an avenue for district courts to defer

punishment and then dismiss convictions, the legislature placed RCW 9.96.060 in

the RCW chapter for "restoration of civil rights." Defendants whose convictions

have been dismissed because they fully complied with a deferred sentencing

program do not need their rights "restored" because their conviction has already

been dismissed. Their rights were never lost. Defendants who have served a

sentence without the benefit of deferral, on the other hand, may seek vacation of

conviction to clear their record and restore their rights.

Neither the term "dismiss" nor "vacate" is defined anywhere in chapters

3.66 or 9.96 RCW or in the SRA. We therefore turn to the dictionary definitions.

*LaCoursiere v. Camwest Dev., Inc.*, 181 Wn.2d 734, 741-42, 339 P.3d 963 (2014)

(citing *Garrison v. Wash. State Nursing Bd.*, 87 Wn.2d 195, 196, 550 P.2d 7

(1976)). *Black's Law Dictionary* defines "dismissal" to mean "[t]ermination of an

action, claim, or charge without further hearing, esp. before a trial; esp., a judge's

decision to stop a court case through the entry of an order or judgment that *imposes*

*no civil or criminal liability on the defendant with respect to that case*." BLACK'S

---

differences emphasize that the statutes serve different purposes and are aimed at different
offenders.

LAW DICTIONARY 589 (11th ed. 2019) (emphasis added). "Vacate" means "[t]o

nullify or cancel; make void; invalidate." *Id.* at 1862.

These definitions explain the legislature's intent in each statute. RCW

3.66.067's purpose is to provide district court judges[5] with authority to defer and

suspend sentences and dismiss charges after a misdemeanant successfully

completes probation.[6] The dismissal, with its statutory consequence of "no civil or

criminal liability on the defendant," provides an incentive to comply with

probation conditions for deserving misdemeanants who acknowledge their

wrongdoing and agree to rehabilitative measures.

RCW 9.96.060's vacation procedures also make sense in the light of that

statute's purpose and the definition of "vacate." Years after a case has concluded,

as must always be the case when a defendant petitions for vacation, the trial court

no longer has jurisdiction to "dismiss" the charges. Vacation therefore provides a

---

[5] RCW 3.50.320 offers an equivalent suspended or deferred sentencing scheme to municipal courts. RCW 9.95.210 provides similar authority to superior courts, though does not mention deferred sentences.

[6] To be sure, we have said that "pre-SRA conviction[s] that result[ed] in a suspended or deferred sentence continue[d] to qualify as . . . 'conviction[s]' under the SRA." *In re Pers. Restraint of Carrier*, 173 Wn.2d 791, 801, 272 P.3d 209 (2012). But there we analyzed dismissed *felony* convictions. The SRA applies only to felonies, not to misdemeanors for which sentencing courts retain "a great deal of discretion when setting probation conditions." *State v. Deskins*, 180 Wn.2d 68, 78, 322 P.3d 780 (2014). I discuss *Carrier* and what it means for this case further in Part II.

procedure to clear the defendant's record and "restore" his or her civil rights *after*

the case has concluded, consistent with chapter 9.96 RCW's overarching purpose.

II.     The SRA Does Not Apply to Misdemeanors, Limiting the Applicability of
        Its Definitions and Cases Interpreting It

The majority, relying on the SRA definition of "conviction," holds that

Haggard's argument "collapses when read in the greater context of the SRA and

our case law interpreting that statutory scheme."  Majority at 6.  But neither

chapter 3.66 nor 9.96 RCW fall under the SRA.  Nor does the SRA apply at all to

misdemeanors—only felonies.  *State v. Snedden*, 149 Wn.2d 914, 922, 73 P.3d 995

(2003) (citing RCW 9.94A.010; *State v. Marks*, 95 Wn. App. 537, 538, 977 P.2d

606 (1999)).  Still, our analysis in two cases considering comparable felony

statutes provides guidance.

The first case is *State v. Breazeale*, 144 Wn.2d 829, 31 P.3d 1155 (2001).  In

*Breazeale*, we interpreted an equivalent statutory scheme for felony charges.  *Id.* at

835.  One statute gave trial courts discretion to impose deferred sentences and

probation followed by dismissal; the other statute gave trial courts discretion to

vacate convictions after a crime-free period of years.  *Id.* at 835-36 (quoting RCW

9.95.240; RCW 9.94A.230(1), *recodified as* RCW 9.94A.640(1)).  Those two

statutes are just like the two statutes at issue in this case:  one creates a deferral

7

plus dismissal scheme and one provides a vacation scheme. *Id.* We held that the legislature intended these two statutes "to have the same practical effect." *Id.* at 837. Indeed, the Sentencing Guidelines Commission had noted that vacation "'operates to clear the record of conviction in the same manner as did the Probation Act.'" *Id.* at 838 (internal quotation marks omitted) (quoting DAVID BOERNER, SENTENCING IN WASHINGTON § 11.6, at 11-7 (1985)).

We then clarified our *Breazeale* decision in the second case: *In re Personal Restraint of Carrier*. 173 Wn.2d 791, 272 P.3d 209 (2012). In that case, the trial court had sentenced the defendant to life in prison under the Persistent Offender Accountability Act of the SRA. *Id.* at 795. In making its sentencing decision, the trial court relied on a pre-SRA "dismissed" conviction as the defendant's first "strike." *Id.*

Clarifying *Breazeale*, we stated that the "entire premise" of *Breazeale*'s analysis was "that the legislature intended the SRA vacation statute to have the same effect as the pre-SRA dismissal statute." *Id.* at 806. This was because "[r]equiring defendants to petition the court twice . . . —first to obtain a dismissal and then to vacate the conviction—serves no purpose." *Id.*

Between the decisions in *Breazeale* and *Carrier*, the legislature amended one of the statutes "to essentially require the two-step process for vacation of pre-

8

SRA convictions" that would serve no purpose. *Id.* at 807. We made it clear that

without these amendments, known as the "*Breazeale* fix," "Carrier would succeed

in his claim that the trial court wrongly included his dismissed conviction in his

criminal history." *Id.* at 806-07.

The legislature has not drafted any misdemeanor "*Breazeale* fix." That

means that the situation we hypothesized in *Carrier* is the exact situation before

the court now. In fact, that is the only permissible interpretation of our holdings in

*Breazeale* and *Carrier*. This court's interpretation of a statute, including our

interpretation of the legislative intent behind a statute, applies to the meaning of

that statute since its inception;[7] the "*Breazeale* fix" can be interpreted only as a

change to the single pre-SRA deferred sentencing scheme it purported to change.

It cannot be interpreted so as to change what the legislature's intent was before that

"fix": that requiring defendants to petition for dismissal *and* vacation "serves no

purpose." *Id.* at 806.

*Carrier* did also observe that "dismissal" under the pre-SRA dismissal

statute "does not invalidate or erase the conviction" and that "vacation of a

---

[7] *In re Pers. Restraint of Hinton*, 152 Wn.2d 853, 859, 100 P.3d 801 (2004)
(applying *In re Pers. Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002)
retroactively despite legislature's post-*Andress* change to the statute at issue because the
court's 2002 construction "determined what the statute had meant since 1976"); *In re
Pers. Restraint of Johnson*, 131 Wn.2d 558, 568, 933 P.2d 1019 (1997).

9

conviction provides the sole mechanism for removing the conviction from a defendant's criminal history." *Id.* at 803-04. But after reaching these conclusions, the *Carrier* court went on to decide that without the *Breazeale* fix, "a court's dismissal of a pre-SRA conviction . . . has the same legal effect as vacating the conviction under the SRA." *Id.* at 806 (citing former RCW 9.95.240 (1957)).

To be sure, there is a difference between RCW 3.66.067 and the statutes interpreted in *Breazeale* and *Carrier*. RCW 3.66.067 does not say that the defendant shall "be released from all penalties and disabilities resulting from the offense." *Cf.* RCW 9.96.060(6)(a); 9.94A.640(3)(a); 9.95.240(1). The majority finds this distinction fatal to Haggard's argument. Majority at 16-17. And it is true that when the legislature uses different terminology, we usually presume it intends a different meaning. *State v. Roggenkamp*, 153 Wn.2d 614, 625, 106 P.3d 196 (2005) (citing *State v. Beaver*, 148 Wn.2d 338, 343, 60 P.3d 586 (2002)).

But we also read statutes to avoid rendering terms meaningless. *Id.* at 624 (quoting *State ex rel. Schillberg v. Barnett*, 79 Wn.2d 578, 584, 488 P.2d 255 (1971)). Regardless of the legislature's inclusion or exclusion of that specific phrase in RCW 3.66.067, it used the word "dismiss." We should not render "dismiss" meaningless because the legislature spelled out the specifics of what "dismiss" means more precisely in other statutes. It would also be absurd to do so.

10

III.    It Would Be Absurd To Render the Dismissal Statute Meaningless

"[W]e presume the legislature does not intend absurd results." *State v.*

*Ervin*, 169 Wn.2d 815, 823-24, 239 P.3d 354 (2010) (citing *State v. Vela*, 100

Wn.2d 636, 641-42, 673 P.2d 185 (1983)).  While both the majority and the State

contend "dismissal" is still a valuable result for the defendant under their

interpretation, neither provides a *single* example of one actual benefit to the

misdemeanant—not even the benefit of being able to truthfully tell a potential

employer that they do not have a criminal conviction.  It would be absurd to

interpret a "dismissed" conviction as identical to any other conviction.

The State contends that dismissal alone means "[a] great deal," such as that

"a defendant was previously convicted, but no longer is."  Suppl. Br. of Resp't at

8.  The State seems to be making the tautological point that the benefit of a

dismissed conviction is that it is dismissed.  It suggests no other specific benefit to

the defendant.  Neither does the majority.

When charges are "dismissed," they should be treated as *dismissed*.  The

majority dismisses this reasoning as "deceptively simple."  Majority at 6.  But its

reading is deceivingly complicated.  Many charged misdemeanants plead guilty to

receive the benefit of deferred sentences on the understanding that after complying

with probation, their charges will be "dismissed."  Using an attractive term like

"dismissal" and then defining it out of existence in the fine print misleads every defendant who agrees to plead guilty in exchange for a deferred sentence.

CONCLUSION

Our legislature does not write meaningless statutes. It crafted a deferred misdemeanor sentencing scheme that allows a small category of deserving misdemeanor defendants to comply with probation terms and get the benefit of dismissal in return. The majority holds that those "dismissed" convictions are identical to all other convictions of all other defendants whose sentences were not deferred or who violated their probation. That cannot possibly be what the legislature intended when it drafted RCW 3.66.067.

I respectfully dissent.

Gordon McCloud, J.

_____

Yu, J

Montoya-Lewis, J.

González, J.