IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38565-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| KEVIN P. HARRELL, | ) | |
| aka KEVIN P HARRELL, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Kevin P. Harrell appeals his conviction for assault in the fourth degree. He argues there was insufficient evidence he was the victim's attacker. We agree and remand for the trial court to vacate his conviction.

FACTS

Tacoma Police Officer Steven Butts responded to a 911 call reporting domestic violence. Chanel Jackson identified her attacker as Kevin Harrell. The State charged Mr. Harrell by amended information with second degree assault and fourth degree assault with domestic violence aggravators.

When Ms. Jackson did not appear for trial, the deputy prosecutor requested a material witness warrant. The warrant issued without success. The State elected to try the case without Ms. Jackson's testimony.

At the beginning of jury selection, the trial court asked each side to introduce themselves to the venire. The deputy prosecutor introduced himself, defense counsel introduced himself, and Mr. Harrell introduced himself. Mr. Harrell said, "Good morning, everybody. My name is Kevin Pierre Harrell, Jr." Report of Proceedings (RP) (Mar. 10, 2020) at 30-31.

*Evidence admitted at trial*

Because the dispositive issue is whether the State presented sufficient evidence that Mr. Harrell was Ms. Jackson's attacker, our discussion is limited to the following facts.

*Officer Butts*

Officer Butts testified that on the evening of April 12, 2019, he responded to a 911 call of domestic violence. When he arrived at the caller's address, a woman opened the door and identified herself as Chanel Jackson. Officer Butts noticed that Ms. Jackson was upset, had red scratches on her neck, and her lip was swollen and bloody. She identified her attacker as Kevin Harrell.

2

*911 call*

The jury heard a recording of Ms. Jackson's call to 911. The relevant portions of that call are quoted below:

> [OPERATOR]: Hi, this is 911. Your phone called us. Do you have an emergency?
> [MS. JACKSON]: I do. I just want to report an assault. My baby's dad came in here. He came to my house, and he assaulted me.
> [OPERATOR]: How long ago did this happen?
> [MS. JACKSON]: This happened about twenty minutes ago.
> [OPERATOR]: Is he still there with you?
> [MS. JACKSON]: No, he just left. But I think he's still here. I think he just parked up the street. But he's coming back.
> . . . .
> [OPERATOR]: And this is your ex-boyfriend?
> . . . .
> [OPERATOR]: Okay. What is his name?
> [MS. JACKSON]: Kevin Harrell, Junior.
> . . . .
> [OPERATOR]: Okay, and spell his last name for me, please.
> [MS. JACKSON]: H-A-R-R-E-L-L.
> [OPERATOR]: Spell his first name.
> [MS. JACKSON]: K-E-V-I-N. He's a junior.
> . . . .
> [OPERATOR]: Is he black, white, Hispanic, Asian?
> [MS. JACKSON]: He's black.
> [OPERATOR]: Date of birth?
> [MS. JACKSON]: . . . 10/29/83.
> [OPERATOR]: How tall is he?
> [MS. JACKSON]: Uh, about 5' 9"
> [OPERATOR]: Thin, medium, heavy?
> [MS. JACKSON]: He's about average, yeah, medium.

State's Ex. 9.

3

*Motion to dismiss*

After the State rested, Mr. Harrell moved to dismiss. He argued the State failed to meet its burden of proof and had violated his right to confrontation. The State addressed the confrontation clause first, noting that the 911 call was admissible as an ongoing emergency and an excited utterance. The State then addressed sufficiency, arguing that the 911 call contained all essential facts to prove its case: that Ms. Jackson called 911, identified herself by name and birthdate, and identified Mr. Harrell by name and birthdate. "She stated that her baby's daddy, referring to Mr. Harrell, came to her house and assaulted her." RP (Mar. 11, 2020) at 195.

The court denied the motion: "I did admit the 911 call as either a present-sense impression or excited utterance, in which case the availability of the declarant was immaterial . . . . And those statements, combined with the photograph evidence [of Ms. Jackson's injuries] . . . allow this case to go forward." RP (Mar. 11, 2020) at 198.

*Closing arguments, motions during deliberations, and verdict*

In closing, the State argued, "Ms. Jackson was at home . . . with the [father] of her baby, Kevin Harrell, Jr., . . . and that's his name. That's the defendant." RP (Mar. 11, 2020) at 252. After replaying the 911 call, the prosecutor continued,

4

> So, now, how do we know that it was committed by the defendant? What is his name?  Kevin Harrell, Jr.  She said, "It's Kevin Harrell, Jr. He's the father of my child."
> Oh, and guess what?  His vehicle or a vehicle that's associated with him is down the street.  Okay.
> What's different, really, from the fact that she's not up there on the witness stand?  What's different?  What more would she have added?  She said exactly who assaulted her.

RP (Mar. 11, 2020) at 261.

In closing, defense counsel argued the State had brought insufficient evidence to convict.  Counsel argued, "The State carries the burden of proving every element of the crime charged, and that includes who's sitting in that chair. Nobody took to the stand and told you who that is.  Nobody.  Nobody told you if that is Kevin Harrell or not.  You have no idea who's sitting in that chair."  RP (Mar. 11, 2020) at 277.  The State objected that it did not have to prove the identity of the person in the chair, which the court overruled.

During jury deliberations, Mr. Harrell asked the court to reconsider the identification issue, citing *State v. Huber*, 129 Wn. App. 499, 119 P.3d 388 (2005), and moved for a directed verdict of not guilty.  The following day, the court heard argument. The court noted that, although it was not evidence and it was not taking judicial notice, "Mr. Harrell made it perfectly clear to the jury that not only was he Kevin Pierre Harrell, he was Kevin Pierre Harrell, Jr."  RP (Mar. 12, 2020) at 296.  The court denied the

5

motion, finding the State brought evidence of a name, physical description, and date of birth.

The State then asked the court to reopen the case so it could introduce a self-authenticating piece of evidence—Mr. Harrell's driver's license—to the jury. Mr. Harrell's driver's license would presumably include his name, race, date of birth, height, and weight. The court denied the State's motion.

The jury found Mr. Harrell not guilty of second degree assault but guilty of fourth degree assault. It found by special verdict that Mr. Harrell and Ms. Jackson were members of the same family or household.

*Sentencing*

The trial court noted that the standard range for fourth degree assault is 0 to 364 days. After hearing argument and a statement from Mr. Harrell, the court entered a deferred sentence from the date of the jury verdict and sentencing, confirmed there was no evidence of non-law-abiding behavior since the jury's verdict and dismissed the case. Mr. Harrell nevertheless appealed.

No. 38565-5-III
*State v. Harrell*

*Appellate procedure*

Division Two of this court raised the issue of appealability. After reviewing the arguments of both parties, a court commissioner concluded that Mr. Harrell could appeal because the jury's finding of guilty and conviction had not been vacated. *See* Ruling on Appealability, *State v. Harrell*, No. 54943-3-II, at 3 (Wash. Ct. App. Oct. 19, 2020). Thereafter, the appeal was administratively transferred to Division Three for adjudication.

ANALYSIS

APPEALABILITY

Both parties raise and discuss appealability. We generally treat a failure to seek modification of a commissioner's decision as nonreviewable. But because appealability is a threshold matter, we briefly discuss the issue below.

RCW 3.66.067 authorizes trial courts to defer sentencing after a defendant has been convicted of a misdemeanor. *City of Bellevue v. Hard*, 84 Wn. App. 453, 457, 928 P.2d 452 (1996). A deferred sentence is a conviction: it requires an initial finding of guilt. *See* RCW 9.94A.030(9) (defining "conviction" as, inter alia, "a finding of guilty"); *State v. Harper*, 50 Wn. App. 578, 580, 749 P.2d 722 (1988) ("[A] deferred sentence is a 'conviction served' for purposes of the [Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW]."). And a dismissed misdemeanor is still a conviction under the

7

SRA. *State v. Haggard*, 195 Wn.2d 544, 553, 461 P.3d 1159 (2020). "While a defendant may later be released from some legal consequence of his or her conviction, i.e., deferred sentence and dismissal, this does not invalidate or erase the initial finding of guilt for future sentencing purposes." *Id.* (citing *In re Pers. Restraint of Carrier*, 173 Wn.2d 791, 803, 272 P.3d 209 (2012)). A dismissal pursuant to RCW 3.66.067 is legally distinct from a vacation pursuant to RCW 9.96.060. *Haggard*, 195 Wn.2d at 553-54. "Dismissing a charge rests almost entirely on the discretion of a trial court" and requires only a showing of good cause and that the defendant has abided by terms of the deferral. *Id.* at 554. Conversely, vacating a conviction entails substantially more. *Id.* "A successful dismissal does not automatically grant a vacation." *Id.* at 555.

To the extent the State argues Mr. Harrell had no right to appeal this matter because he is not harmed by the dismissal of his misdemeanor conviction, we disagree. The dismissal does not erase the initial finding of guilt and could impact Mr. Harrell's sentencing if he was to be convicted of a crime in the future. We conclude that Mr. Harrell may appeal his dismissed conviction.

SUFFICIENCY OF THE EVIDENCE

Mr. Harrell argues that his conviction must be vacated because there was insufficient evidence of identity, i.e., that he committed the offense. We agree.

8

"Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt." *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). When a defendant challenges the sufficiency of the evidence, they admit the truth of the State's evidence and all reasonable inferences that could be drawn therefrom. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence is no less reliable in determining sufficiency of the evidence than direct evidence. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, credibility determinations, and persuasiveness of evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

Due process requires the State to prove every element of a crime beyond a reasonable doubt. U.S. CONST., amend. XIV; CONST., art. I § 3; *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Identity is a key element to every crime: the State must prove the accused is the person who committed the crime in order to convict. *State v. Hill*, 83 Wn.2d 558, 560, 520 P.2d 618 (1974); *Huber*, 129 Wn. App. at 501. "Identity involves a question of fact for the jury and any relevant fact, either direct or circumstantial, which would convince or tend to convince a person of ordinary

judgment, in carrying on his everyday affairs, of the identity of a person should be received and evaluated." *Hill*, 83 Wn.2d at 560.

Here, the State presented the 911 call to the jury. During that call, Ms. Jackson described her attacker as her "baby's dad . . . Kevin Harrell, Junior," and described him as Black, about 5'9" tall, medium build, and gave his date of birth as October 29, 1983. State's Ex. 9. Despite these descriptors, the State produced no evidence that Mr. Harrell had fathered a child with Ms. Jackson nor did it produce any evidence of his height, build, or date of birth.[1]

The State relies on *Hill* and argues it may prove identity without an in-court identification of the defendant. We agree with the premise, but distinguish *Hill*.

In *Hill*, the defendant was convicted of unlawful possession of a narcotic drug. *Id.* at 558. At trial, the defendant was present in the courtroom during the arresting officer's testimony. *Id.* at 560. The officer testified that he arrested the defendant after a person made a complaint about the defendant and a weapon. *Id.* at 559. While making the

---

[1] Prior to oral argument, we directed our divisional clerk to ask both parties to provide supplemental briefs answering two questions: (1) whether the defendant's self-identification to the venire jury as "Kevin Pierre Harrell, Jr." could support his conviction, and (2) whether we could infer from the jury's verdict that the defendant matched the race, approximate age, height, and build described in the 911 call. Mr. Harrell answered "no" to both questions, and the State answered "yes" to the first question and "no" to the second question.

arrest, he saw the defendant drop a tissue and something else. *Id.* The officer picked up the tissue, placed the defendant in his patrol car, went back to the area, and found two capsules near where the tissue had been dropped. *Id.* Both capsules tested positive for heroin. *Id.*

On appeal, Hill argued his conviction had to be dismissed because the arresting officer did not make an in-court identification of him. *Id.* at 560. In rejecting this argument, the *Hill* court emphasized that the officer's testimony included references to the person who dropped the tissue and the capsules as "the defendant." *Id.*

*Hill* is readily distinguishable. There, the arresting officer testified he saw "the defendant" drop something that turned out to be capsules of heroin. Here, the arresting officer did not testify he saw "the defendant" commit the charged offense.

In its supplemental briefing, the State cites and discusses several foreign decisions consistent with *Hill*. *See State v. Ploof*, 165 N.H. 113, 116, 70 A.3d 456 (2013); *People v. Kern*, 6 Mich. App. 406, 408-09, 149 N.W.2d 216 (1967); *Purkey v. State*, 656 S.W.2d 519, 520 (Tex. App. 1983); *State v. Olson*, 244 N.W.2d 718, 721 (N.D. 1976). In each of these cases, the State's witnesses failed to provide an in-court identification that the defendant was the person they saw commit the charged offense. Each court nevertheless sustained the conviction because the jury could infer identity based on the witnesses'

11

testimonies describing "the defendant" as the person they saw committing the charged offense. These foreign decisions are similarly distinguishable from the present case.[2]

Also in its supplemental briefing, the State argues that a jury may infer that the person sitting next to defense counsel is the defendant named in the charge. Resp't's Suppl. Br. at 3-4. This argument misses the point. To convict Mr. Harrell of assault, the State needed to prove more than that it charged the defendant; it needed to prove that the defendant was the person who attacked Ms. Jackson.

---

[2] In addition, in *Kern*, the trial court identified the defendant by name and alias to the venire jury. 6 Mich. App. at 408. The *Kern* court acknowledged that this did not excuse the State from proving identity, but nonetheless held that the testimony of the complaining witness sufficiently identified Mr. Kern as the person who committed the charged offense.

Here, the trial court asked the parties to introduce themselves. They each complied. We are reluctant to sustain a conviction based on a self-identification prompted by a trial court. The State has not provided us with any analysis of this issue, and we decline to rule on it. *Schroeder v. Excelsior Mgmt. Grp., LLC*, 177 Wn.2d 94, 108, 297 P.3d 677 (2013).

No. 38565-5-III
*State v. Harrell*

We conclude there is no evidence or reasonable inference therefrom that the defendant attacked Ms. Jackson. We remand for the trial court to reverse and vacate Mr. Harrell's conviction for fourth degree assault.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Siddoway, C.J.

Pennell, J.

13