IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 82936-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MAURICE A. BROWN, | ) | |
| | ) | |
| Appellant | ) | |
| | ) | |

ANDRUS, C.J. — Maurice Anthony Brown appeals his conviction and sentence for two counts of promoting prostitution. Brown contends the trial court erred in including two out-of-state burglary convictions in his offender score because they are not comparable to any Washington crimes. He also argues the two burglary convictions wash out despite a subsequent out-of-state forgery conviction. Brown further maintains the trial court failed to determine if his two prior Washington drug conspiracy convictions from 2010 constituted the same criminal conduct. In a statement of additional grounds, Brown raises a number of allegations, from prosecutorial misconduct to ineffective assistance of counsel.

We conclude the trial court properly included Brown's Georgia burglary convictions from 1997 and 1998 in the offender score and correctly held that his 2004 Georgia forgery conviction, while old enough to wash out, interrupted the ten-

Citations and pin cites are based on the Westlaw online version of the cited material.

year washout period for the prior burglaries. We further conclude Brown failed to raise the same criminal conduct issue with the trial court. Finally, we conclude the arguments Brown raises in his statement of additional grounds lack merit.

## FACTS

The State charged Brown with two counts of promoting prostitution in the first degree and two counts of rape in the second degree, relating to victims E.P. and J.B. The State alleged Brown forced these women to work for him as prostitutes for financial gain, sexually assaulted them, and used physical abuse and drugs to keep them compliant. A jury convicted Brown of promoting prostitution in the first degree relating to victim E.P. and promoting prostitution in the second degree relating to victim J.B.[1] It deadlocked on the two rape charges.

At a retrial of the rape charges, Brown waived the right to counsel and represented himself. A jury acquitted him of one rape charge and deadlocked again on the second. The court subsequently granted the State's motion to dismiss this remaining rape charge.

At sentencing, the State argued Brown had an offender score of "5" based on four prior felony convictions that scored and one current offense. The four felonies included two Georgia burglary convictions from 1997 and 1998, a 2004 Georgia conviction for forgery, and two 2012 Washington convictions under the Uniform Controlled Substances Act for conspiracy to deliver cocaine and heroin. The State contended the two Georgia burglaries were comparable to Washington's residential burglary statute, RCW 9A.52.020, or the second-degree burglary

---

[1] The State charged Brown with additional counts of promoting prostitution and rape relating to a third alleged victim, C.P., but dismissed the charges when C.P. did not appear to testify at trial.

statute, RCW 9A.52.030. It acknowledged that Brown's 2004 forgery conviction washed out but argued it nevertheless prevented the earlier burglaries from washing out.

Brown did not dispute his prior convictions, did not challenge the comparability of the burglary convictions under Washington law, and did not argue that his two drug convictions constituted the same course of conduct. Instead, Brown argued the Georgia forgery conviction had not been included in his offender score when he was sentenced in 2012 and should not be included in his score at this stage. Brown also contended his offender score should be zero because all of his prior convictions should wash out.

The sentencing court overruled Brown's objections, finding the State proved Brown's prior convictions by a preponderance of the evidence. It noted that Brown had stipulated in his 2012 plea agreement that the Georgia burglary and forgery convictions should be counted in his offender score. The court concluded that the Georgia burglaries were comparable to burglary, a class B felony, under Washington law. The court also concluded that the Georgia forgery conviction was comparable to Washington forgery, a class C felony. Finally, the court determined that, even though the forgery conviction washed out, it interrupted the 10-year crime-free period that was required for the prior Georgia burglary convictions to wash out.

The court sentenced Brown at the high end of the standard range on each count, 61 months and 22 months, to run concurrently, based on an offender score of 5. Brown appeals.

- 3 -

ANALYSIS

Brown's Offender Score

Brown contends that the trial court erred in calculating his offender score because (1) the two Georgia burglary convictions are not comparable to any burglary offense in Washington; (2) the 2004 Georgia forgery conviction washed out and cannot be the basis for interrupting the washout period applicable to the burglary convictions; and (3) his two conspiracy to deliver controlled substances convictions constituted the same course of conduct.[2]

(1) Legal and factual comparability of the Georgia burglary convictions

Brown first argues that his 1997 and 1998 burglary convictions from Georgia should have been excluded from his offender score. We disagree.

A defendant's offender score is calculated by examining a defendant's criminal history. RCW 9.94A.525; RCW 9.94A.030(11). Prior convictions result in offender score points in accordance with the rules provided in RCW 9.94A.525. Under RCW 9.94A.525(3), out-of-state convictions "shall be classified according to the comparable offense definitions and sentences provided by Washington law."

To compare offenses, we use a two-part test. *Matter of Canha*, 189 Wn.2d 359, 367, 402 P.3d 266 (2017). First, we analyze legal comparability by comparing the elements of the out-of-state offense to the most comparable Washington offense. *Id.; In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 255, 111 P.3d 837

---

[2] Brown also contends the sentencing court erred in checking a box indicating that Brown was to serve his two concurrent sentences consecutively "to any previously imposed sentences not referred to in this order." Both Brown and the State suggest this may have been done inadvertently. Given that Brown has no "previously imposed sentences" that he is currently serving, the inadvertent box-checking is not an error that will affect Brown. We need not address the issue any further.

- 4 -

(2005). When the crimes' elements are the same, the offenses are legally comparable, our analysis ends, and the crime is included in the offender score. *Id.*

If the elements are "substantially similar," or if the foreign jurisdiction's definition of the crime is narrower than Washington's definition, then the out-of-state conviction applies toward the defendant's offender score. *Lavery*, 154 Wn.2d at 255; *State v. Ford*, 137 Wn.2d 472, 479-80, 973 P.2d 452 (1999). If the out-of-state offense is broader than the most closely comparable Washington statute, then the court proceeds to the second step of the test: conducting a factual comparability analysis. *State v. Morley*, 134 Wn.2d 588, 606, 952 P.2d 167 (1998).

Offenses are factually comparable when the defendant's conduct would have violated a Washington statute. *Canha*, 189 Wn.2d at 367. We may rely on facts that were admitted, stipulated, or proved to the fact finder beyond a reasonable doubt. *Id.* The comparability of offenses is a question of law that we review de novo. *State v. Jordan*, 180 Wn.2d 456, 460, 325 P.3d 181 (2014).

In 1996, a Georgia grand jury indicted Brown on one count of burglary. Brown pleaded guilty to this charge on March 17, 1997. In 1997, a Georgia grand jury again indicted Brown on one count of burglary. On February 9, 1998, Brown pleaded guilty to this charge and confirmed that he was "in fact guilty."

Georgia's burglary statute in effect at the time of Brown's crimes was not legally comparable to Washington's residential burglary and second-degree burglary statutes. The relevant portion of Georgia's burglary statute provided:

> A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use as

the dwelling of another or enters or remains within any other building, railroad car, aircraft, or any room or any part thereof.

Former Ga. Code Ann. § 16-7-1(a) (1980).

Washington's residential burglary statute at the relevant times stated that "[a] person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle." RCW 9A.52.025(1); former RCW 9A.52.025(1) (1989). And contemporaneous with Brown's Georgia burglaries, Washington's second-degree burglary statute stated that "[a] person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building other than a vehicle or a dwelling." Former RCW 9A.52.030(1) (1989).

Brown and the State agree that the Georgia burglary statute is broader than Washington's burglary statutes because Georgia law characterizes the unlawful entry into a vehicle as a burglary, whereas the Washington burglary statutes exclude vehicles from their scope. The Georgia burglary statute is thus not legally comparable to either Washington burglary statute, and we move on to analyze factual comparability.

The State contends that Brown's Georgia burglary convictions are factually comparable. We agree. Factual comparability requires us to evaluate whether the defendant's conduct would have violated a Washington statute. *Lavery*, 154 Wn.2d at 255. The key inquiry is whether, under the Washington statute, the defendant could have been convicted if the same acts were committed in Washington. *State v. Thomas*, 135 Wn. App. 474, 485, 144 P.3d 1178 (2006).

- 6 -

To protect the defendant's constitutional right to a jury, we consider only the "facts that were admitted, stipulated to, or proved beyond a reasonable doubt." *State v. Olsen*, 180 Wn.2d 468, 478, 325 P.3d 187 (2014) (quoting *State v. Thiefault*, 160 Wn.2d 409, 415, 158 P.3d 580 (2007)). And to determine the facts to which a defendant admitted as part of a prior guilty plea, Washington courts "look to the law of the state in which the defendant entered the plea[.]" *State v. Releford*, 148 Wn. App. 478, 489, 200 P.3d 729 (2009); *Olsen*, 180 Wn.2d at 478-79 (reviewing another state's law to determine what elements were admitted when pleading guilty). In Georgia, "[a] plea of guilty admits the facts set forth in an accusation or indictment." *Neslein v. State*, 288 Ga. App. 234, 653 S.E. 2d 825, 827 (2007).

The indictments alleged that Brown "did unlawfully, without authority, enter into the dwelling house of George Smith with intent to commit a theft therein," and that he "without authority and with intent to commit a theft therein, did enter and remain in the dwelling house of William Deloney. . . . " By pleading guilty to these charges, Brown admitted these factual allegations. Brown would have been convicted of residential burglary had he committed the same acts in Washington because unlawfully entering a person's residence with the intent to commit theft is residential burglary in this state. Brown's Georgia convictions are therefore factually comparable to Washington's residential burglary, a class B felony, under RCW 9A.52.025(2).

(2) <u>Effect of Georgia forgery conviction under washout provision</u>

Brown next argues that his two burglary convictions should not be included in his offender score because they washed out under RCW 9.94A.525(2). Prior convictions are not counted as points if, through crime-free time spent in the community, they have "washed out" according to the statutory criteria. *State v. Zamudio*, 192 Wn. App. 503, 507, 368 P.3d 222 (2016). Under RCW 9.94A.525(2)(b), a prior class B felony conviction

> shall not be included in the offender score if, since the last date of release from confinement (including full-time residential treatment) pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender had spent ten consecutive years in the community without committing any crime that subsequently results in a conviction.

Although Brown concedes he was convicted of forgery in Georgia in 2004, he contends this conviction cannot be considered when determining if he was crime-free for 10 years after his burglary convictions for two reasons. First, he argues forgery in Georgia is not legally comparable to forgery in Washington. Second, he contends that because the forgery conviction washed out under RCW 9.94A.525(2)(c), it is as if that conviction never existed and cannot interrupt the 10-year washout period. We reject both arguments.

First, Georgia and Washington law on forgery is comparable. Brown argues the Georgia statute criminalizing forgery is broader than Washington's forgery statute because there is no requirement in Georgia that the state prove that the document allegedly forged was a "written instrument" with "legal efficacy." The Georgia first-degree forgery statute in effect in 2002 provided:

A person commits the offense of forgery in the first degree when with intent to defraud he knowingly makes, alters, or possesses any writing in a fictitious name or in such manner that the writing as made or altered purports to have been made by another person, at another time, with different provisions, or by authority of one who did not give such authority and utters or delivers such writing.

Ga. Code Ann. § 16-9-1(b) (effective until June 30, 2012).

In 2002, Washington's forgery statute, RCW 9A.60.020, provided:

(1) A person is guilty of forgery if, with intent to injure or defraud:
(a) He falsely makes, completes, or alters a written instrument or;
(b) He possesses, utters, offers, disposes of, or puts off as true a written instrument which he . . . knows to be forged.

RCW 9A.60.020. Brown points out that Georgia's code refers to a "writing," whereas Washington's refers to a "written instrument." He contends that because Georgia law did not statutorily define "writing," the forgery statute was necessarily broader than the Washington forgery statute. But Georgia did have a statutory definition of "writing":

the word 'writing' includes, but is not limited to, printing or any other method of recording information, money, coins, tokens, stamps, seals, credit cards, badges, trademarks, and other symbols of value, right, privilege, or identification.

Former Ga. Code Ann. § 16-9-3 (1968). In Georgia, the essential elements of the offense of forgery are the false making of an instrument, with the intent to defraud, and the tendency or capacity of the writing to prejudice the right of another person. *Nix v. State*, 108 Ga. App. 704, 705, 134 S.E. 2d 551 (1963). The writing must have some legal efficacy to be the subject matter of forgery. *Brazil v. State*, 117 Ga. 32, 462, 43 S.E. 460, (1903); *Nix*, 134 S.E. 2d at 552 ("[t]he check set out in

the indictment was of apparent 'legal efficacy' and thus had the capacity to be the subject matter of a forgery[.]"),

In Washington, a "written instrument" must similarly have "legal efficacy." An "instrument" under common law is "something which, if genuine, may have legal effect or be the foundation of legal liability." *State v. Scoby*, 117 Wn.2d 55, 57-58, 810 P.2d 1358 (1991). *See also State v. Ring*, 191 Wn. App. 787, 794, 364 P.3d 853 (2015) (a document's legal efficacy requirement is a common law definition of "instrument" in RCW 9A.60.020). The textual difference between Georgia's forgery statute and Washington's forgery statute is immaterial because case law indicates they are legally comparable.

Moreover, the underlying facts indicate that, had Brown performed the same actions in Washington, his actions would have constituted forgery under Washington law. On August 23, 2002, the State of Georgia alleged that Brown

> on June 06, 2002 with intent to defraud, did knowingly possess a certain writing, to wit: a check, being No. 58212 dated June 5, 2002, in the amount of $960.22 payable to Mourice Brown a/k/a Maurice Brown drawn on Wachovia Bank on the account of Turner Construction, the said check being made in such a manner that it purports to have been made by another person and by authority of one who did not give such authority and the accused did utter and deliver said check and writing. . . .

Brown pleaded guilty to these allegations on November 1, 2004, thereby admitting these facts. Had Brown pleaded to these same facts in the State of Washington, he would have been convicted of forgery, just as he was in Georgia. Brown's 2004 forgery conviction is comparable to a forgery conviction under Washington law.

Second, a conviction that washes out for purposes of computing an offender score is not the same as a vacated conviction. There is no dispute that Brown's

2004 forgery conviction washed out under RCW 9.94A.525(2)(c).[3] But whether that same conviction can interrupt the 10-year washout period for the burglary convictions depends on an interpretation of the phrase "any crime that subsequently results in a conviction" under RCW 9.94A.525(2)(b).

The most analogous case is *State v. Haggard*, 195 Wn.2d 544, 549, 461 P.3d 1159 (2020), in which the Supreme Court analyzed the effect of a dismissed misdemeanor conviction under the washout provision of RCW 9.94A.525(2)(c). In that case, the court said the washout provision can be broken down into two clauses: a trigger clause that identifies the beginning of the washout period, and a continuity or interruption clause that outlines the substantive requirements an offender must satisfy during the washout period. It noted that the phrase "any crime" in the interruption clause is undefined in RCW 9.94A.525(2)(c), but RCW 9A.04.040(1) supplied the necessary definition: "An offense defined by this title or by any other statute of this state, for which a sentence of imprisonment is authorized, constitutes a crime." A dismissed misdemeanor conviction, it concluded, is a "conviction" under this statutory definition and properly included in the defendant's criminal history. *Haggard,* 195 Wn.2d at 553, 560, 562.

---

[3] RCW 9.94A.525(2)(c) provides:

> [C]lass C prior felony convictions other than sex offenses shall not be included in the offender score if, since the last date of release from confinement . . . pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender had spent five consecutive years in the community without committing any crime that subsequently results in a conviction.

The sentencing court did not count Brown's washed out forgery conviction in his offender score because he committed that crime more than five years after he was released from confinement on the burglary convictions.

Brown argues a conviction that washes out for purposes of computing an offender score is the same as a vacated conviction. But the Supreme Court rejected that argument in *Haggard*. 195 Wn.2d at 561-62. In comparing a deferred prosecution and dismissal with a vacated conviction, it stated "[v]acation under RCW 9.96.060 sets out specific requirements deemed necessary by the legislature." *Id.* at 561. Any defendant who has a dismissed conviction must still separately seek vacation of that conviction in order for it to be omitted from his criminal history. *Id.* at 562. It concluded that a washed out conviction is not the same as a vacated conviction. Brown cites no case law to the contrary.[4]

RCW 9.94A.525(2)(b) provides that the 10-year washout period is interrupted by "<u>any crime</u> that subsequently results in a <u>conviction</u>." (Emphasis added). This language is clear and unambiguous. "Any crime" includes a crime that may have washed out for offender score purposes under RCW 9.94A.525, as long as the conviction has not been reversed on appeal or vacated by a court under RCW 9.96.060.

We affirm the trial court's conclusion that the 2004 forgery conviction interrupted Brown's 10-year washout period.

(3) <u>Same criminal conduct</u>

Brown next argues that the trial court erred in failing to determine whether his two 2012 convictions for conspiracy to deliver controlled substances constitute

---

[4] Brown maintains that under *In re Pers. Restraint of LaChapelle*, a sentencing court cannot "retroactively revive previously washed out convictions" and use them to interrupt the washout period. 153 Wn.2d 1, 11, 100 P.3d 805 (2004). But the only issue in *LaChapelle* was whether 1997 amendments to the definition of "criminal history" in the Sentencing Reform Act of 1981 applied retroactively to allow previously washed out juvenile adjudications to be included in a defendant's offender score. *Id.* at 13. The court evaluated the retroactivity of a statutory amendment to the definition of "criminal history," not the meaning of the washout provision.

the "same criminal conduct" for purposes of calculating his offender score. Because Brown failed to raise this statutory argument below, we will not consider it for the first time on appeal.

Generally, we address only those issues that were argued before the trial court. RAP 2.5(a). A defendant who fails to ask a trial court to make a "same criminal conduct" determination at sentencing waives the argument on appeal. *State v. Wilson*, 117 Wn. App. 1, 21-22, 75 P.3d 573 (2003). While Brown objected to many things during the course of his sentencing hearing in July 2021, he did not request a "same criminal conduct" analysis.

While the doctrine of waiver does not apply to an alleged sentencing error that is a legal error leading to an excessive sentence, courts can find waiver where the alleged error involves a factual issue, later disputed, or where the alleged error involves a matter of trial court discretion. *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 873-74, 50 P.3d 618 (2002). The failure of a trial court to conduct, sua sponte, a same criminal conduct analysis does not raise a calculation or mathematical error. "[I]t is a failure to identify a factual dispute for the court's resolution and a failure to request an exercise of the court's discretion." *State v. Nitsch*, 100 Wn. App. 512, 520, 997 P.2d 1000 (2000). In *Nitsch*, we held that

> [T]he trial court's failure to conduct [a same criminal conduct] review sua sponte cannot result in a sentence that is illegal. The trial court thus should not be required, without invitation, to identify the presence or absence of the issue and rule thereon.

*Id.* at 525. We decline to reach the same criminal conduct issue here for the first time on appeal.

Brown's Statement of Additional Grounds

Brown raises a number of arguments in two separately submitted statements of additional grounds, one filed March 8, 2022, and one filed May 2, 2022. Although at times Brown's two pleadings are difficult to decipher, we have distilled his claims down to (1) evidentiary objections; (2) a claim of judicial bias; (3) alleged jury selection errors; (4) prosecutorial misconduct; (5) sufficiency of the evidence supporting his convictions; (6) a claim of witness recantation of testimony; and (7) ineffective assistance of counsel.

(1) Evidentiary objections

(a) E.P.'s competency to testify at trial

Brown contends the trial court erred in permitting E.P. to testify because she admitted she was under the influence of heroin at trial. Witnesses are incompetent to testify if they are (1) "of unsound mind, or intoxicated at the time of their production for examination," or (2) "appear incapable of receiving just impressions of the facts, respecting which they are examined, or of relating them truly." RCW 5.60.050(1)-(2). All witnesses . . . are presumed competent until proven otherwise by a preponderance of evidence. *State v. Brousseau*, 172 Wn.2d 331, 341, 259 P.3d 209 (2011). The party challenging the competency of the witness has the burden of proving incompetency. *Id*. We afford significant deference to the trial judge's competency determination and will disturb such a ruling only on a finding of manifest abuse of discretion. *Id*. at 340.

E.P. testified she used heroin at 6 a.m. on the morning of her testimony. She also testified she felt "okay" to testify and the drug did not alter her memory.

During a sidebar, defense counsel objected to her testifying while under the influence of a narcotic. The trial court overruled this objection, finding that E.P. was competent to testify because the witness was tracking questions and "there was nothing in her verbal answers or her nonverbal demeanor that suggested to the Court that she was not competent to testify today." The record supports the trial court's findings. The court did not abuse its discretion in overruling Brown's competency objection.

(b) Request for mental health evaluation of J.B.

Brown contends the trial court erred in refusing to require victim J.B. to undergo a mental health evaluation. We cannot find any indication in the record that Brown or his attorney ever asked the trial court to order such an evaluation. Nor can we identify a basis for concluding that it would have been an abuse of discretion to deny such a request. We cannot, on the record before us, conclude the court abused its discretion by not ordering J.B. to undergo a mental health evaluation.

(c)     The State's failure to call certain witnesses at trial

Brown contends the prosecutor engaged in misconduct by declining to call the police officer who confiscated Brown's phone to testify at trial. Brown was represented by counsel in his first trial, and his attorney could have called this or any other witness who may have had personal knowledge of exculpatory evidence. A trial court makes no decisions regarding which witnesses a party should call to

testify, and we will not disturb a trial verdict based on a prosecutor not choosing to call a witness.

     (d) Evidence about alleged victim, C.P.

   Brown contends the trial court erred in not allowing him to present evidence surrounding the allegations of C.P., a witness who failed to appear to testify at trial. But at the close of the State's case, the State moved to dismiss counts 5 and 6 because the prosecutor was unable to locate C.P. Brown was not at jeopardy of being convicted of any charges arising out of allegations reported by C.P., and any evidence regarding C.P.'s allegations became irrelevant when the court granted the State's motion to dismiss all counts relating to her.

   Brown's statement of additional grounds mentions that the prosecutor talked about C.P. in the State's opening argument, but Brown does not argue that these references prejudiced him in any way. Immediately after the court dismissed charges relating to victim C.P., it gave Brown the opportunity to offer special jury instructions to address the dismissed charges. He did not proffer any for the court's consideration. The defense lodged no objections to the State's proposed jury instructions. The court specifically instructed the jury that the counts against victim C.P. had been dismissed, the jury was only to consider the remaining charges, and that if evidence was not admitted or was stricken, the jury was not to consider it. "Washington courts have, for years, firmly presumed that jurors follow the court's instructions." *Diaz v. State,* 175 Wn.2d 457, 474, 285 P.3d 873 (2012). We can identify no evidentiary errors relating to references to C.P.

(e)     Allegations of mistaken identity

Brown contends that the real criminals are the mother of Brown's children, Iesha, and Brown's son, Maurice Jr.  He seems to argue that he has been the victim of mistaken identity because he and Maurice Jr. share the same name and possibly birth date.  But Brown is merely relitigating the factual evidence presented at trial and has not identified any legal error for us to review.  We will not review on appeal a jury's credibility determinations.  *State v. Robinson*, 189 Wn. App. 877, 896, 359 P.3d 874 (2015).

(f)     Relevance of expert testimony

Brown contends the trial court erred in permitting Detective Maurice Washington to present expert testimony about the trafficking of young girls, testimony Brown contends was irrelevant to the charges against him.  But Detective Washington was called to testify about the pimp and prostitute subculture.  Detective Washington testified that he has personal experience and training in many undercover policing areas, including human trafficking, the trafficking of minors, and the promotion of prostitution of adult women.  Contrary to Brown's claims, Detective Washington did not testify that Brown was trafficking young girls or even suggest Brown was doing so.

(2) Alleged judicial bias

Brown alleges that the trial judge was biased against him.  But he has not presented any evidence to support a challenge under the judicial fairness doctrine.  To prove he did not receive a fair, impartial, and neutral hearing, Brown must present evidence of a judge's actual or potential bias.  *State v. Bilal*, 77 Wn. App.

720, 722, 893 P.2d 674 (1995). The transcript from Brown's trial and sentencing reveals no evidence that the trial judge was biased against him. Contrary to Brown's accusations, the trial court did not give the jury a police statement from victim J.B., did not handpick Brown's jurors, and did not engage in other actions Brown alleges in his statement of additional grounds. On the contrary, the record consistently shows that rulings throughout the pretrial, trial, and sentencing were even-handed, were supported by law, and constituted an appropriate use of judicial discretion.

(3) Errors in jury selection

Brown raises several claims relating to jury selection. We reject each of these arguments.

(a) Juror bias

Brown alleges that during voir dire, a prospective juror, juror no. 11, made a statement—off the record—that "I want someone['s] life in my hands." This juror was empaneled, and Brown contends he should not have been permitted to remain on the jury. There is no evidence before us that any such statement was made. "Because these arguments are not supported by credible evidence in the record, we cannot review them. . . . If material facts exist that have not been previously presented and heard, and require vacation of the conviction, then [the appellant's] recourse is to bring a properly supported personal restraint petition." *State v. Alvarado*, 164 Wn. 2d 556, 569, 192 P.3d 345 (2008); RAP 10.10(c).

Brown next argues that the trial court erred in not excusing for cause any juror who read a local newspaper article erroneously reporting that Brown had

- 18 -

been convicted for rape, sodomy, and kidnapping in Atlanta in 1993. During voir dire, some jurors indicated in a pretrial questionnaire that they had read the article or had read some news report indicating Brown had a criminal history. Defense counsel asked the court to exclude any jurors who read the article. The trial court noted that one juror, prospective juror no. 63, wrote about Brown in their questionnaire response "Arrested outside Iron Horse Casino near where I lived; is said to have raped women and forced them to have sex for drugs while he kept the money. I read that he has a lengthy criminal record." The court ruled that counsel would need to make further inquiry to determine if any potential juror who had read about the case actually believed what they had read, or if they could put it aside and make a decision based on the evidence presented in court. It denied the motion to excuse the jurors for cause at that time but indicated it would consider a challenge for cause depending on how jurors responded to questions during voir dire.

Brown did not identify any jurors who indicated, when individually questioned about the case, that they had read the article and could not set it aside. "A trial court need not excuse a juror with preconceived ideas if the juror can set those ideas aside and decide the case on the evidence presented at the trial and the law as provided by the court." *State v. Phillips*, 6 Wn. App. 2d 651, 662, 431 P.3d 1056 (2018). We note that juror no. 63 was not empaneled. We cannot identify any errors in the trial court's rulings on any challenge for cause.

(b) Racial makeup of jury

Brown asserts that he was convicted by an "All white and Asian" jury, prejudicing his right to a fair trial. Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant has a right to a jury drawn from a fair cross section of the community. *In re Yates*, 177 Wn.2d 1, 19, 296 P.3d 872 (2013). To make a prima facie showing of a Sixth Amendment fair cross section claim, a defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systemic exclusion of the group in the jury-selection process. *Id.* (citing *Duren v. Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979)).

Brown has not made this prima facie showing. A fair cross-section claim applies to the selection of the venire, not the dismissal of individual jurors at the jury panel stage. *Holland v. Illinois*, 493 U.S. 474, 480, 110 S. Ct. 803, 107 L. Ed. 2d 905 (1990). Brown makes no attempt to establish that the representation of Black jurors in venires in King County is unfair and unreasonable in relation to the number of Black people in the community. Nor has he presented any evidence that any underrepresentation is due to the systemic exclusion of Black people in the jury selection process.

At the jury panel stage, jury selection must be done in a fair way that does not exclude qualified jurors on inappropriate grounds. *Rocha v. King County*, 195 Wn.2d 412, 428-29, 460 P.3d 624 (2020). Brown has made no showing that any

juror was excluded because of their race. The State exercised peremptory challenges on juror no. 17 and juror no. 30. Brown did not object. The State then moved to strike juror no. 18, but defense counsel timely objected under GR 37. The prosecutor apologized, claiming that her notes were a little "jumbled," and withdrew her motion to strike. Juror no. 18 was empaneled. The State then waived a third peremptory and reserved the final two for the juror added as the alternate and any new panel member seated as a result of the defense peremptory challenges. The State subsequently moved to exclude juror no. 32 without objection from the defense. The State did not challenge juror no. 23, a self-identified person of color, and this juror was empaneled, but then juror no. 23 failed to report for trial. The State exercised no other peremptory challenges. Brown has not demonstrated any errors in the jury selection process.

(4) Prosecutorial misconduct

Brown raises several allegations of prosecutorial misconduct. To prevail on grounds of prosecutorial misconduct, a defendant must show improper conduct resulting in prejudice. *State v. Pirtle*, 127 Wn.2d 628, 672, 904 P.2d 245 (1995).

(a) Pre-trial interview of J.B.

Brown alleges the prosecutor and a police detective engaged in misconduct by preparing a police report alleging that Brown's defense attorney had engaged in witness intimidation through his questioning of J.B. during a defense interview. Brown's attorney brought this matter to the trial court's attention after J.B. ended the defense interview prematurely due to what he believed was her anxiety. Counsel then received a police report in which the witness alleged that she was

afraid of him, felt intimidated by him, and wanted Detective Murphy (the author of the police report) to sit in on any further defense interviews. Defense counsel expressed surprise at the police report, particularly given that the prosecutor was present during the interview and told him that he "was very nice" to J.B. during his questioning of her.

In response, the prosecutor informed the court that the victim was willing to complete the defense interview but had requested that the lead detective, Detective Murphy, be present for emotional support. The prosecutor indicated that the detective had written the report, not to suggest counsel had committed a crime, but to ensure that any conversation with the victim was documented, at the defense's request. The court found the explanation "disingenuous" because the police report included an "offense code," but asked the parties to brief the issue of whether a testifying detective should be present during the interview.

The State subsequently filed a motion to allow the victim J.B. to have Detective Murphy present during the defense interview. After considering the briefing and argument, the court ordered that Detective Murphy would be allowed to sit outside the interview room with the door open and in J.B.'s line of sight, but the detective could not ask questions or participate in the interview. The court further ordered that "[t]here will be no police report issued regarding the defense interview."

Brown raises this issue as a basis for a new trial. But even if we, like the trial court, were concerned about the propriety of a detective preparing a police report about the manner in which an attorney conducts a defense interview of an

alleged victim, we can see no basis for concluding that the incident in any way impacted the fairness or the outcome of Brown's trial. The trial court resolved the matter and Brown's attorney was able to complete the interview of J.B. before trial.

(b) Prosecutor questions during voir dire

Brown contends the prosecutor committed misconduct by asking potential jurors their opinions regarding whether people are treated fairly by the judicial system or if they felt uncomfortable with the charges. Before jury selection began, defense counsel and the prosecutor had extensive discussions about potential juror questions with the court, and they mutually agreed on questions on a variety of topics, including jurors' feelings about law enforcement, the judicial system, and the charges.

Brown puts forward no evidence that the prosecutor's follow up questions during voir dire tainted the pool in any way. *See State v. Zamora*, No. 99959-7, __ Wn.2d __, 512 P.3d 512, ¶33 (June 30, 2022) (test in evaluating prosecutor remarks during jury selection is whether objective observer could view the prosecutor's questions and comments during voir dire as an appeal to the jury panel's potential prejudice, bias, or stereotypes). Nor has he demonstrated how the prosecutor's questions were otherwise improper or prejudicial. To establish prosecutorial misconduct, the defendant must show the prosecutor's conduct was both improper and prejudicial in the context of the entire record and circumstances at trial. *State v. Slater*, 197 Wn.2d 660, 681, 486 P.3d 873 (2021). Brown has failed to make this showing.

(c) Burden shifting

Brown alleges that during trial the State shifted the burden of proof to him, unfairly prejudicing his right to a fair trial. Prosecuting attorneys are permitted latitude to argue the facts in evidence and reasonable inferences in their closing arguments. *State v. Dhaliwal*, 150 Wn.2d 559, 577, 79 P.3d 432 (2003). It is misconduct to shift the burden of proof to the defendant, *State v. Miles*, 139 Wn. App. 879, 890, 162 P.3d 1169 (2007), but the prosecuting attorney is entitled to point out the lack of evidentiary support for the defense theory of the case. *State v. Osman*, 192 Wn. App. 355, 367, 366 P.3d 956 (2016).

Brown has not cited any evidence in the record demonstrating any instance when the State engaged in burden shifting. After our own review, we can find no evidence to support this argument.

(d) *Brady* violation

Brown alleges the prosecutor committed misconduct by misrepresenting to the court that the State had no obligation to make J.B. available for a defense interview. Brown cites to *Brady v. Maryland*, under which prosecutors and law enforcement must turn over exculpatory and impeachment evidence. 373 U.S. 83, 84, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). But *Brady* does not govern the State's duty to assist in arranging a defense interview of a crime victim. It is misconduct for a prosecutor to instruct or advise a witness not to speak with defense counsel unless the prosecutor is present. *State v. Hofstetter*, 75 Wn. App. 390, 402, 878 P.2d 474 (1994). But the prosecutor may inform a witness of her right to choose not to give a pretrial interview or of her right to decide who should be present at

that interview. *Id.* We can find no evidence the prosecutor prevented a defense interview of J.B., but we did find evidence that all requested defense interviews were completed before the first trial.

Brown also seems to contend that the prosecutor failed to disclose the fact that victim E.P. had a warrant for her arrest for a charge of driving under the influence. He argues the prosecutor held this warrant over E.P.'s head and threatened her to force her to give false testimony. But prior to the retrial, Brown raised the fact that the victims had outstanding arrest warrants. The prosecutor stated she was unaware that there were any such warrants and "frankly, I would prefer that they did as it's—would make them appear faster. But I am not aware that they have any, but I will check." Brown stated that he had information indicating that E.P. had two outstanding warrants. The prosecutor looked E.P. up in a database and confirmed that E.P. "has an active warrant for a 2005 DUI that apparently she missed a review hearing at some point in the last year." The court asked the State to "monitor the status of any other warrants that are out there," but made it clear to Brown that "warrants come and warrants go." The court ordered the State to notify it and Brown before E.P. or J.B. testified as to whether either witness had any outstanding warrants. From what we can glean from the record, the prosecutor complied with this order.

Finally, Brown seems to contend the State withheld some recordings, letters, or other unspecified items of discovery from him. The State, however, verified on numerous occasions that it had turned over everything it had, and on some occasions the trial court even instructed the prosecutor to reproduce for

Brown items that were actually generated by Brown's own prior counsel despite such assistance not ordinarily being the responsibility of the prosecutor. As to the allegedly missing items, the court informed Brown that "[j]ust because you ask for something doesn't mean it exists." When Brown insisted he was missing discovery, the trial court held a pretrial evidentiary hearing, at which the State called Detective Murphy and the public records officer for the City of Kent. After this hearing, the trial court found no evidence that either Detective Murphy or the City of Kent had withheld discovery. The record supports the trial court's findings, and we reject Brown's *Brady* claim.

(e) Other allegations of misconduct

Brown alleges the prosecutor "insert[ed] herself as a witness," committed misconduct by reading the probable cause statement aloud at Brown's arraignment rather than simply handing it to Brown's attorney and the judge, and pulled victims from jail and offered them lighter sentences in exchange for false testimony. None of these allegations is supported by the record.

Brown also alleges that a S.W.A.T. raid on his home on June 7, 2019, was handled in a manner that interfered with Brown's rights or was somehow a "ruse." Brown, however, cites to no evidence that the drug raid interfered with Brown's rights. To the extent this allegation is based on information not in the record before us, it is not an appropriate issue to raise on direct appeal. *State v. Alvarado*, 164 Wn.2d at 569; RAP 10.10(c).

We reject as unsubstantiated Brown's allegations of prosecutorial and police misconduct.

(5) <u>Insufficient evidence or lack of witness credibility</u>

While not always using the "sufficiency of the evidence" term of art, Brown's statements of additional grounds repeatedly imply that either a witness's testimony was so insufficient that it did not establish that Brown committed the crimes for which he was charged or that witnesses were simply not credible.

Evidence is sufficient to support a guilty verdict if any rational trier of fact, could find the elements of the charged crime beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). We view the evidence in the light most favorable to the State, drawing reasonable inferences in the State's favor. *Id.* at 265-66. Circumstantial and direct evidence are to be considered equally reliable, and credibility determinations are not subject to review. *Id.* at 266.

The jury convicted Brown of promoting prostitution in the first degree with regard to victim E.P. It convicted Brown of promoting prostitution in the second degree with regard to victim J.B. To prove promoting prostitution in the first degree, the State had to prove that Brown

> knowingly advances prostitution by compelling a person by threat or force to engage in prostitution or when he or she knowingly profits from prostitution that was compelled by threat or force.

RCW 9A.88.070(1)(a). To prove promoting prostitution in the second degree, the State had to prove that Brown "knowingly profits from or advances prostitution." RCW 9A.88.080(1).

E.P.'s testimony provides sufficient evidence for a jury to find that Brown compelled her to engage in prostitution through the use or threat of force or

- 27 -

knowingly profited from prostitution that had been compelled by threat or force. E.P. testified Brown forced her to engage in sex with his friends and other clients in exchange for heroin. E.P. testified that a man paid Brown money in exchange for E.P. getting naked and engaging in oral sex with him. E.P. identified the hotels where she performed sexual acts on Brown's behalf and the amount of money clients paid Brown to have sex with her and J.B.

With regard to threats or force, E.P. testified that when she refused to engage in oral sex with Brown, he smacked her in the face, and that if she did not do what Brown wanted he refused to give her heroin until she became "dope sick." She testified that she knew not to "piss [Brown] off or defy him" or else "you could get hit" and that it made her afraid. She explained that sometimes Brown would have her drive to a hotel and he would punish her. E.P. explained that she remained afraid of Brown and that the mother of Brown's child had threatened to kill her if she testified. A rational jury could convict Brown of promoting prostitution in the first degree based on this testimony.

The testimony of both E.P. and J.B. is sufficient to establish promoting prostitution in the second degree. J.B. testified that she engaged in sex for money with the money going to Brown (among others). J.B. corroborated E.P.'s testimony that E.P. also engaged in prostitution. J.B. admitted she asked Brown for prostitution opportunities because she needed to pay rent. And J.B. confirmed that she told police detectives during interviews that "if [she] wouldn't perform the prostitution act that Mr. Brown would get violent, threaten [her] and call [her] a bitch and a whore and that he'll f***ing kill [her.]" She further testified that Brown threw

her against a car in a way that hurt her back and neck. The evidence at trial was sufficient to establish the elements of the charged crimes beyond a reasonable doubt.

Throughout both of his statements of additional grounds, Brown raises numerous claims that witnesses did not testify truthfully, that their testimony was inconsistent with prior statements, or that their testimony was inconsistent with the testimony of other witnesses. We will not set aside a jury verdict based on the defendant's personal assessment of a witness's credibility. *See Robinson*, 189 Wn. App. at 896.

(6) Witness recantation of testimony

Brown alleges that during the retrial on the rape charges, J.B. recanted her allegations that Brown forced her into engaging in prostitution and that this recantation warranted a new trial. After his retrial and acquittal on the rape charge, Brown filed several motions with the trial court, including a motion to dismiss, asserting that "[J.B.] clearly stated several times she did not want to be at this 19-1-04585-6 KNT trial." He further alleged that "[J.B.] will further state that what she testified to at a previous proceeding, trial court . . . case 19-C-04585-6 KNT of Judge Shah['s] court, my not committing any of the alleged offenses against her, that what she said obviously [doesn't] mean anything."

The trial court heard from Brown on this motion on July 2, 2021. Brown again claimed J.B. testified Brown had not committed the charged offenses. He argued J.B. was forced to testify at the second trial against her will. The court denied Brown's motion, finding no evidence of prosecutorial misconduct regarding

- 29 -

J.B.'s testimony, and noting that the jurors had had the opportunity to decide whether J.B. was a credible witness.

Recantation is "newly discovered evidence" warranting a new trial. *State v. Macon*, 128 Wn.2d 784, 799-800, 911 P.2d 1004 (1996). To obtain a new trial based on newly discovered evidence, a defendant must prove that the evidence (1) will probably change the result of the trial; (2) was discovered after the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching. *Id.* at 800.

But we can find no evidence that J.B.'s testimony at the retrial constituted a recantation of her testimony at the first trial as to the promoting prostitution charge of which Brown was convicted. It is true that J.B. took the stand at the retrial and denied Brown raped her, and it is also true that J.B. attempted to make excuses for the assaults that she received from Brown (e.g., that Brown hit her because she was, in her words, "mouthy."). But J.B. did not state, during the retrial, that Brown did not help her engage in prostitution or that Brown did not profit from doing so. Based on our review of the trial testimony, J.B. did not recant her testimony in any way that would have changed the outcome of the first trial.

(7) Ineffective assistance of counsel

Brown contends his attorney provided ineffective assistance of counsel at trial. To prevail on his ineffective assistance of counsel claim, Brown must show that his counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced his trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Nichols*, 161

- 30 -

Wn.2d 1, 8, 162 P.3d 1122 (2007). We review de novo an ineffective assistance of counsel claim. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

Brown alleges that his attorney was ineffective in failing to inform the court, when it set bail, that several convictions on which the State relied had been expunged. But the record before us contains no evidence that the State or the trial court relied on expunged convictions in setting bail. Although the State's original request for bail listed several 1993 convictions for aggravated sodomy, rape, and kidnapping, when the court arraigned Brown on July 18, 2019, his attorney reserved argument on the propriety of bail or the appropriateness of any bail amount because "[w]e need to sort out some of the [criminal] history. As I understand it, the prosecutor's office is also looking into the history." We can find no indication Brown raised the matter with the trial court after arraignment.

Brown next alleges that his attorney was ineffective by not objecting to the expert testimony of Detective Washington. To prevail on a claim that counsel's failure to object to witness testimony constituted ineffective assistance, Brown must establish that (1) no legitimate strategic or tactical reasons supported the challenged conduct, (2) an objection to the evidence would likely have been sustained, and (3) the jury verdict would have been different had the evidence not been admitted. *State v. Saunders*, 91 Wn. App. 575, 578, 958 P.2d 364 (1998).

Brown's counsel endorsed Detective Washington as a defense witness. The record here shows that there was a strategic reason for doing so. Brown's defense theory at trial was that the police investigating the allegations of E.P. and J.B. took no steps to verify their stories. Counsel argued to the jury that the Kent

police did not follow up with any of the hotels that E.P. identified to verify that she and Brown had actually rented rooms there. Detective Washington testified that he would deem it important to make "a concerted effort to visit that location, photograph that location," and find out if there was any evidence, "such as surveillance video or witnesses [who] may have seen [the] victim." He testified that people working the front desk may be able to identify the victim or the perpetrator. Hotel receipts would also be important to show when a person checked in, who booked the room, who paid for the room, whether guests were identified as staying in the room, whether they registered a vehicle with the room, and whether they paid in cash or with a credit card. And Detective Washington confirmed that this investigation may reveal discrepancies in the victim's story. There was a logical, strategic reason for wanting the jury to hear this testimony, given that so much depended on the testimony of E.P. and J.B. "Deficient performance is not shown by matters that go to trial strategy or tactics." *State v. Saunders*, 91 Wn. App. at 578 (citing *State v. Hendrickson,* 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996)).

Brown next argues that his attorney should have found out that E.P. had outstanding warrants for driving under the influence and check fraud. The extent of counsel's investigation into E.P.'s criminal history raises issues that are outside of this record. However, there was extensive testimony at trial about E.P.'s criminal history, including testimony about her having been arrested and booked into jail for both a DUI and identity theft. Counsel was clearly aware of E.P.'s criminal history and used it to challenge her credibility at trial.

Finally, Brown contends that his attorney was ineffective by (1) failing to notice that when the police raided his home, there were two men named Maurice Brown present (Brown and his son) and failing to present this evidence to the jury, (2) failing to present evidence that the police drug raid on his home was a ruse, (3) failing to locate and call other alleged rape victims as witnesses at trial, and (4) failing to insist that Brown be allowed to listen to recordings of conversations during which prosecutors offered reduced sentences to witnesses in exchange for allegedly false testimony. After an exhaustive review of this record, we can find no factual or legal basis for any of these allegations.

We therefore affirm.

_Andrus, C.J._

WE CONCUR:

_Chung, J._          _Bunson, J._